IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

              v.                  :      CRIMINAL NO. 14-379

                                  :

ROBERT WENDELL LANDIS                 O R D E R

        AND NOW, this         day of          , 2016, it
is hereby

        ORDERED that having reviewed the defendant's petition
for relief under 28 U.S.C. § 2255 and the government's response
thereto, the defendant's petition is denied.

        IT IS FURTHER ORDERED that no probable cause exists
for the issuance of a certificate of appealability and,
therefore, none should issue.

                        BY THE COURT:


                        _____
                        HONORABLE STEWART DALZELL
                        *Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :

           v.                      :        CRIMINAL NO. 14-379

ROBERT WENDELL LANDIS          :


## GOVERNMENT'S RESPONSE TO DEFENDANT'S PETITION UNDER 28 U.S.C. § 2255

The United States of America, by its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Roberta Benjamin, Assistant United States Attorney for the District, responds to defendant's petition under 28 U.S.C. § 2255 as follows:

I.   **BACKGROUND**

On June 4, 2015, a grand jury in the Eastern District of Pennsylvania returned a third superseding indictment charging Robert Wendell Landis ("the defendant") with a five count indictment: one count of possession of child pornography, in violation of Title 18, United States Code, Section 2552(a)(4) [count one]; two counts of receipt of child pornography, in violation of Title 18, United States Code, Section 2552(a)(2) [counts two and three];  one count of online enticement, in

violation of Title 18, United States Code, Section 2422(b)
[count four]; and one count of production of child pornography,
in violation of Title 18, United States Code, Section 2251(e)
[count five]. A notice of forfeiture was also included.[1]

On July 22, 2015, the defendant appeared before the
Honorable Stewart Dalzell and entered a guilty plea to counts
one, two and three of the indictment, pursuant to a plea
agreement.[2] On, October 28, 2015, the defendant was sentenced
to 90 months' imprisonment, 10 years supervised release, and
a $300 special assessment.[3]  The government moved to dismiss
counts four and five of the indictment, which the Court granted[4].
The defendant was represented at the guilty plea and sentencing
hearings by Evan Hughes, Esq., privately retained counsel. The
defendant filed a petition for relief, pursuant to 28 U.S.C.
§ 2255, on March 25, 2016, which was later dismissed as moot by

---

[1] See Government Exhibit A, Third Superseding Indictment
("indictment").
[2] See Government Exhibits B, C, and D.
[3] See Government Exhibit E.
[4]  It should be noted that the fourth and fifth counts of the third
superseding indictment carried significantly greater statutory
mandatory minimum terms of imprisonment (that is, 10 and 15
years of imprisonment) than the counts to which the defendant
pleaded guilty.  Defense counsel was able to negotiate a C plea
to 90 months imprisonment on the first three counts of the
indictment, two of which carried only five year mandatory terms
of imprisonment, and the dismissal of the most serious charges.

the Honorable Stewart Dalzell.[5]  The defendant filed a subsequent petition for relief pursuant to 28 U.S.C. §2255 ("2255 petition") with leave to file supplemental briefs and exhibits.[6]  The Honorable Stewart Dalzell granted petitioner's request and ordered the government to respond to the 2255 petition.

## II.  ARGUMENT

In his petition, Landis argues the following points: (1) that the indictment was jurisdictionally defective and omitted elements of the charged offenses, with respect to counts two and three of the indictment;[7] (2) that the same statutory provision was charged in counts one, two and three of the indictment which constituted multiplicity;[8] (3) that counts four and five of the indictment were missing essential elements;[9] (4) that there was a manipulation between his attorney and the government and district court in accepting the conviction in this case;[10] and (5) that three motions for "Franks" hearings should be conducted because his Fourth Amendment

_____

5 See docket entry number 80.
6 See docket entry number 79.
7 Defense affidavit, pg. 2, paragraphs 7 and 9.
8 Defense affidavit, pg. 2, paragraph 7.
9 Defense affidavit, pg. 2, paragraph 8.
10 Defense affidavit, pg. 2, paragraph 9.

rights were violated.[11] It should be noted that the plea agreement between the defendant and the government precludes Landis from filing a petition under 28 U.S.C. § 2255 for the reasons he has raised. Petitioner attempts to circumvent this limitation by arguing that his counsel was ineffective in not raising the issues contained in his petition.  However, there was nothing ineffective in counsel's decision not to pursue the issues raised by Landis.  To the contrary, as petitioner's claims are baseless and legally inaccurate on the merits, counsel acted appropriately in not filing them.  Consequently, Landis' 2255 petition should be denied.[12]

A.   Standard for Ineffective Assistance of Counsel

The well-established standard for evaluating claims of ineffective assistance of counsel comes from Strickland v. Washington, 466 U.S. 668 (1984), where the Supreme Court stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper

---

[11] Defense motion for leave to file supplemental briefs and exhibits, pg. 2.

[12] Landis also uses his petition to request the return of monies paid to his counsel for his representation.  Clearly, this is not the forum for such a request; thus, the government does not address this claim beyond mentioning its existence.

4

functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 685. In keeping with its focus on the adversarial process, the Supreme Court in Strickland held that a claim of ineffective assistance of counsel has two components -- inadequate performance of counsel, and prejudice resulting from that inadequate performance. The first part of the test requires the defendant to show that trial counsel's performance was constitutionally deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Id. at 687. The governing performance standards depend in large part on the standards set by the legal profession: "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. In applying the "professional norms" standard, however, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. Accordingly, the Court in Strickland held, "[a] fair assessment of attorney performance

5

requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. Even if he could satisfy the first part of the Strickland test, by showing that his attorney failed to satisfy professional standards, a defendant is not entitled to relief unless he can also satisfy the second part of the test, by showing that counsel's unprofessional errors actually prejudiced the defense. 466 U.S. at 687. The defendant has the burden of establishing prejudice, and it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the proceeding. Id. at 693. Instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994). The Court in Strickland explained that "[a] reasonable probability is a probability sufficient to undermine the confidence in the

6

outcome." 466 U.S. at 694.  Thus, the gravamen of the
Strickland inquiry remains "whether, despite the strong
presumption of reliability, the result of the particular
proceeding is unreliable because of a breakdown in the
adversarial process that our system counts on to produce just
results." Id. at 696; see Lockhart v. Fretwell, 506 U.S. 364,
368-69 (1993) (the proven errors must be so serious that the
defendant was deprived of "a trial whose result is reliable.").
The defendant must show an error which "constitutes a
'fundamental defect which inherently results in a complete
miscarriage of justice."' Brecht v. Abrahamson, 507 U.S. 619,
634 n.8 (1993), quoting United States v. Timmreck, 441 U.S. 780,
783 (1979).

Once Landis' claims are examined in detail, it is clear that
there is no merit to his contention that his counsel was
ineffective in not raising any of the pretrial allegations set
forth in his 2255 petition. Landis certainly has not
demonstrated first, that counsel's performance was
constitutionally deficient and, secondly, that even if there
were "mistakes", there is a reasonable probability that, but
for those unprofessional errors, the result of the proceeding

would have been different. A more thorough examination of petitioner's arguments makes clear that his claims are without merit and that there were no mistakes by his counsel in not raising the issues discussed herein.

### B.   Landis' Collateral Rights Waiver was Knowing/Voluntary; No Miscarriage of Justice.

Upon a petition for relief based on an alleged faulty waiver of the right to collateral review, this Court's first task is to assure that the waiver was entered knowingly and voluntarily. See United States v. Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008) ("Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it."). The question is whether "the district court 'inform[ed] the defendant of, and determine[d] that the defendant underst[ood] . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence' as Federal Rule of Criminal Procedure 11(b)(1)(N) requires." Id. at 239 (bracketed material and ellipsis in

8

original).

As the change of plea hearing transcript demonstrates, although the defendant now claims, in effect, that his plea was defective because of counsel's failure to file pretrial motions, the plea was knowing, voluntary and sound.  Indeed, the sufficiency of Landis' waiver of his collateral attack rights is confirmed by the fact that he reaped substantial benefits from the plea agreement.  If convicted of all five offenses, the defendant would have faced a statutory mandatory minimum of 15 years and a possible guideline range that was over 20 years' imprisonment.  It is, therefore, clear why Landis willingly agreed to the collateral attack (and appellate) waiver which the government proposed as part of the plea bargain.

Because the waiver was entered knowingly and voluntarily, it must be enforced in the absence of a miscarriage of justice. Mabry, 536 F.3d at 236-37.  In United States v. Khattak, 273 F.3d 557 (3d Cir. 2001), the Third Circuit Court held that waivers of appeal are enforceable, but observed that "[t]here may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver."  Id. at 562.

There was no miscarriage of justice in this case. The Court in Khattak did not provide a definitive list of situations which amount to a "miscarriage of justice." It observed that other appellate courts have suggested that only extraordinary situations would suffice. See, e.g., United States v. Brown, 232 F.3d 399, 403 (4th Cir. 2000) (there may be a miscarriage of justice if the sentence was "1) imposed in excess of the maximum penalty provided by law or 2) based on a constitutionally impermissible factor such as race."); United States v. Joiner, 183 F.3d 635, 645 (7th Cir. 1999) (may be miscarriage of justice if the plea agreement was the product of ineffective assistance of counsel). Khattak embraced the view of the First Circuit, that a reviewing court should evaluate appellate waivers case-by-case, considering the error claimed by the defendant and such factors as "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." 273 F.3d at 563 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir.

2001)).

It is apparent that the "miscarriage of justice" exception is quite narrow. It "will be applied sparingly and without undue generosity," United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting United States v. Teeter, 257 F.3d 14, 26 (1st Cir. 2001)), only where "manifest injustice" would result by enforcing the appellate waiver, United States v. Gwinnett, 483 F.3d 200, 206 (3d Cir. 2007). Simply because an issue is meritorious is not sufficient. Adopting the view of other Circuits, the Third Circuit stated in Khattak:

> [B]y waiving the right to appeal, a defendant necessarily waives the opportunity to challenge the sentence imposed, regardless of the merits. As the Court of Appeals for the Eleventh Circuit explained:
>
>> A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues - indeed, it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it included only those appeals that border on the frivolous . . . . While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded.
>
> [United States v. Howie, 166 F.3d 1166, 1169 (11th Cir. 1999)]; see also United States v. Wenger, 58 F.3d 280, 282 (7th Cir.1995) ("Defendants who appeal from sentences following plea agreements always point to unanticipated and unwelcome developments. . . To say that a waiver of

appeal is effective if and only if the defendant lacks
grounds . . . is to say that waivers will not be honored.").

Khattak, 273 F.3d at 561-62.

Thus, in Mabry, the Third Circuit enforced a waiver of the
right to collateral review of the claim that defense counsel
was ineffective in failing to file an appeal.  "The issues Mabry
seeks to raise on appeal are insubstantial and clearly
encompassed by the broad waiver.  They do not implicate
fundamental rights or constitutional principles.  The District
Court's conclusion - that the purportedly appealable issues are
not substantial and fall clearly within the terms of the waiver
- is correct."  Mabry, 536 F.3d at 243.  See also United States
v. Lockett, 406 F.3d 207, 212-14 (3d Cir. 2005) (meritorious
sentencing argument under Booker is not a basis for the
defendant to evade his appellate waiver); United States v.
Jackson, 523 F.3d 234, 244 (3d Cir. 2008) ("it will be a rare
and unusual situation when claims of an unreasonable sentence,
standing alone, will be sufficient to invalidate a waiver
because of a miscarriage of justice.");[13]  United States v.

_____

[13] In Jackson, the Court rested its view in part on the fact that
the Supreme Court, in Gall v. United States, 128 S. Ct. 586
(2007), made clear that sentencing decisions of a district court
must be afforded considerable deference on appeal; thus it is

Perez, 514 F.3d 296, 298 (3d Cir. 2007) (enforcing waiver of
right to appeal restitution order, as that was a term of
sentencing regarding which the defendant waived the right to
appeal); United States v. Schweitzer, 454 F.3d 197, 205 (3d Cir.
2006) (applying waiver to preclude appeal of challenge to
allegations in indictment).

    To date, the Third Circuit has identified only limited
circumstances as presenting a miscarriage of justice permitting
a collateral challenge to proceed despite the waiver.  The
Court has stated that an appellate waiver may not be enforced
if the defendant should have been permitted to withdraw his
guilty plea, United States v. Wilson, 429 F.3d 455, 458 (3d Cir.
2005); if the defendant did not understand the plea agreement
itself due to ineffective assistance of counsel, United States
v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007); if counsel was
ineffective in failing to timely file an appeal raising an issue
explicitly exempted from the appellate waiver provision, id.;
or if the government breached its own obligations under the plea

---

difficult to conceive of a case in which such discretionary
decision would cause a miscarriage of justice.  In Jackson,
where the defendant only sought to appeal the reasonableness
of his sentence, the Third Circuit Court concluded that the
"case obviously does not present the 'unusual circumstances'
we contemplated in Khattack."  Jackson, 523 F.3d at 244.

agreement, <u>United States v. Schwartz</u>, 511 F.3d 403, 405 (3d Cir. 2008).  None of those circumstances exists in this case.

In this case, the government cannot conceive of an issue falling within the narrow miscarriage of justice exception. None of the circumstances addressed in <u>Shedrick</u> is present in this case.  The defendant here pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement which resulted in a substantial benefit to the defendant.

C.    <u>Petitioner Robert Wendell Landis' baseless arguments</u>

(1) Jurisdictional defect in the form of lack of subject matter jurisdiction in counts two and three of the indictment.[14]

Contrary to petitioner's contentions, not only do counts two and three of the third superseding indictment follow the language of the criminal statute charged[15], that is, 18 U.S.C. § 2252(a)(2), but also, the language charges that the defendant "received visual depictions that had been shipped in interstate and foreign commerce".  18 U.S.C. § 2252(a)(2) states, in relevant part:

---

14 The government has combined the jurisdictional argument raised in Landis' first petition with that raised in his supplemental one.

15 See Government Exhibit A, pgs. 3-4.

(a)  Any person who—

(2) knowingly receives, or distributes, any
    visual depiction using any means or facility
    of interstate or foreign commerce or that has
    been mailed, or has been shipped or
    transported in or affecting interstate or
    foreign commerce, or which contains
    materials which have been mailed or so
    shipped or transported, by any means
    including by computer, or knowingly
    reproduces any visual depiction for
    distribution using any means or facility of
    interstate or foreign commerce or in or
    affecting interstate or foreign commerce or
    through the mails, if –

    (A)  the producing of such visual
         depiction involves the use of a
         minor engaging in sexually
         explicit conduct; and

    (B)  such visual depiction is of such
         conduct;[18 U.S.C. § 2252(a)(2)]

Clearly, the language referring to "interstate and foreign
commerce" provides the requisite interstate nexus and, thus,
subject matter jurisdiction. In deciding cases under the child
pornography statutes, the Third Circuit has held that the
transmission of images by means of the Internet is tantamount
to moving them across state lines; and constitutes movement in
interstate commerce. See United States v. MacEwan, 445 F.3d 237,
245-46 (3d Cir. 2006).  This is, in fact, what happened in

15

Landis' case, as evidenced by the factual basis for the charges at the change of plea hearing.[16]

As the interstate nexus was clearly contained in the language of the indictment and was established through the factual basis at the change of plea hearing, trial counsel made no mistake and was in no way ineffective in failing to raise this in a pretrial motion.

(2) Multiplicity in the three counts of the indictment.

A review of the first three counts of the third superseding indictment reveals that there are different dates for each charge. Count one charges a possession offense on March 26, 2013, that is, the date that Yahoo! provided the images of child pornography that were contained in Landis' emails.[17]

Count Two charges receipt of child pornography on March 22, 2012 and Count Three charges receipt of child pornography on July 20, 2012.  Again, the government's change of plea

---

[16] See Government Exhibit D, change of plea hearing transcript; pages 27-8.
[17] See Government Exhibit D, pgs. 28-9. As noted in the change of plea transcript, this was part of the government's change of plea memorandum ( Government Exhibit C, pg. four), as well as in the government's statement of the factual basis for the possession charge at the change of plea hearing.

memorandum outlines the details that support the different criminal acts.[18] The government's statement of the factual basis for these two counts of the indictment, to which Landis knowingly and voluntarily agreed at the change of plea hearing, further supports that there were separate criminal acts which comprised the different charges contained in the indictment.[19] As there was no multiplicity in the three counts of the indictment to which Landis pleaded guilty, trial counsel made no mistake and was in no way ineffective in failing to raise this in a pretrial motion.

(3) Counts four and five of the indictment were missing essential elements.

Since counts four and five of the indictment were dismissed at sentencing pursuant to the plea agreement, there is no need to address this allegation.  Regardless, all requisite elements were included in the charges. The government can elaborate on this should the Court deem it necessary.

(4) There was manipulation between defense counsel, the government and district court in accepting the conviction in this case.

---

[18] See Government Exhibit C, pgs.4-8.

[19] See Government Exhibit D, pgs. 28-32.

Not only is this allegation raised based on nothing more than an unsupported conjecture, but also, the record directly contradicts this false accusation.  The plea agreement presented to Landis was extremely generous and released him from facing the two most serious charges against him; charges which carried 10 and 15 statutory mandatory minimum sentences, as opposed to the five year statutory mandatory minimum sentence Landis did face with respect to counts two and three of the indictment. Furthermore, the Court conducted a thorough and complete colloquy with Landis at the change of plea hearing, affording him the opportunity to raise any problems that he had with his counsel as well as to refuse to waive his pretrial rights.[20]  Finally, the Court advised Landis of the limits of his rights to collaterally attack his plea and sentence under the plea agreement that he had signed knowingly and voluntarily.[21] Clearly, Landis' claim is without any merit.

---

[20] See Government Exhibit D, pg. 6 (satisfied with counsel); pages 10-15 (no motion practice, including challenges to evidence gathering, search warrants executed; suppression of evidence; no motions filed; separate acknowledgment of rights form-pg. 14);
[21] See Government Exhibit D, pgs. 18-19.

(5) Three motions for "Franks" hearings should be conducted because his Fourth Amendment rights were violated by the issuance of three search warrants.

As already noted, the Court determined that the defendant knowingly and voluntarily waived his pretrial rights both in the written plea agreement document and at the change of plea hearing.  Suppression issues are ones that are included in those pretrial rights.  A 2255 petition is not the forum to raise them.  Regardless, all three search warrants contained probable cause, were reviewed by magistrates and approved by those independent jurists.

The claims raised by Landis in his 2255 petition are, at best circular and without any clear, specific allegations of reckless falsity required for a "Franks" hearing.  Landis has attached as exhibits to his 2255 petition the affidavits at issue.  A review of each of them reveals that they withstand scrutiny.

(A) Search warrant for Facebook account relating to wlandis1:[22]

---

[22] Defendant's Exhibit A.

Landis claims that the agent was deceitful and misled the magistrate by claiming he was seeking records pertaining to the minor's account, when he was on a "fishing expedition" of Landis' account.[23]   This allegation is completely false.   A review of paragraph 32 of the affidavit (pg. 9) discusses the Facebook chats containing suspected sexual conversations between a 27 year old male (later determined to be Landis) and a minor. Follow up investigation, which is outlined in the subsequent paragraphs of the affidavit (paragraphs 33-37), helped in trying to identify the 27 year old male, amongst other things.   Then, in paragraphs 38-42, samples of Facebook conversations between the parties were provided to the magistrate.   There was nothing improper, deceitful, false or misleading in the affidavit.   To the contrary, it clearly established the requisite probable cause.   The magistrate's review and approval deserves deference and should be upheld. There is no basis for a "Franks" hearing, even if this were the forum for such a review.

---

[23] **Defendant's Exhibit A, pg. 9.**

(B)  Search warrant for Landis' residence, 1102 Colonial Court, Norristown, PA:[24]

Landis argues that the first search warrant produced "no fruits of criminal conduct whatsoever"; and because he had no prior criminal record involving illegal adult or minor pornography; and because no evidence was found of him having uploaded or downloaded any images of child pornography, there was no probable cause for the issuance of this second search warrant.[25]

Landis is factually and legally wrong.  First, the Facebook search warrant did produce hundreds of Facebook chats between him and the minor, some of which contained (a) requests by Landis to get the minor to send him "pics", otherwise known as child pornography (CP) pictures of the minor; and (b) discussions of their sexual encounters which included sexual intercourse and fellatio. Clearly, this evidence supported the criminal conduct being investigated. Secondly, the fact that the defendant had no prior criminal record of CP activity was not determinative for the issuance or non-issuance of a search warrant. Finally, evidence was found that Landis had CP images

---

24 Defendant's Exhibit B.
25 Defendant's Exhibit B, pg. 8.

of the minor in his Yahoo! email accounts.  He was charged and pleaded guilty to receiving them, in counts two and three of the indictment.  This he did, clearly, when he received email transmissions from the minor containing the CP images, on two separate occasions. This information is in the government's change of plea memorandum and was outlined at the change of plea hearing, as part of the factual basis for Landis' guilty plea.[26]

Regardless of the foregoing, Landis is legally wrong in his claim that evidence of criminality is required to have been obtained before law enforcement continues its investigation of suspected criminal conduct.  The first Facebook search warrant was signed by a magistrate on November 29, 2012.  The second search warrant for Landis' residence was signed just a few weeks later, on December 18, 2012.  Law enforcement was not required to have received the results of the Facebook search warrant, analyzed them and determined that they showed that Landis was engaging in criminal conduct before seeking a search warrant for the petitioner's residence.  There was nothing improper, deceitful, false or misleading in the affidavit for the second search warrant and Landis has failed to point to anything even

_____

26 See Government Exhibits C (pgs. 6-7) and D (pgs. 28-9).

remotely suggesting this.   To the contrary, it clearly established the requisite probable cause.   The magistrate's review and approval deserves deference and should be upheld. There is no basis for a "Franks" hearing, even if this were the forum for such a review.

(C) Search warrant for Yahoo! account relating to two yahoo accounts used by Landis.[27]

Landis argues that the affidavit for the third search warrant contains inconclusive facts like the identity of the minor.[28]   The petitioner also alleges that there should have been a suppression hearing because the agent continued his investigation despite there being "fruits of the poisonous tree".   This latter argument requires no response other than to say that it is inapplicable and makes no sense.   There was no poisonous tree, especially since the first two search warrants were legitimate.   As to the identity of the minor, the agent was not required to conclusively identify the minor; merely the fact that she was a minor was sufficient to conclude that Landis' communications and interaction with her were sexually inappropriate and illegal.   Regardless, Landis is

---

[27] Defendant's Exhibit C.
[28] Defendant's Exhibit C, pg. 3.

factually inaccurate. In paragraph 31 of the third search warrant,[29] the minor was identified and interviewed. She indicated that she knew Landis and had engaged in (illegal) sexual activity with him. In fact, she was able to retrieve Landis' previously identified telephone number from her cell phone.

There was nothing improper, deceitful, false or misleading in the affidavit for the third search warrant. To the contrary, it clearly established the requisite probable cause. The magistrate's review and approval deserves deference and should be upheld. There is no basis for a "Franks" hearing, even if this were the forum for such a review.

It is abundantly clear that Landis' attorney made no mistakes by not asserting the claims or filing the pretrial motions that petitioner has raised in his 2255 motion. In fact, had his attorney decided to file frivolous pretrial motions like these claims, he might not have been able to successfully negotiate the favorable plea agreement that he did, which resulted in an enormous break for his client. Consequently,

_____

[29] Defendant's Exhibit C, pg. 18.

the decision by his attorney would not constitute ineffective assistance of counsel.

Based on the foregoing, petitioner's arguments are without merit and his counsel was not ineffective in deciding not to file frivolous pretrial motions. Landis' petition should be denied.

III. **A Certificate of Appealability Should Not Issue**.

Upon the denial of a Section 2255 motion by the district court, an appeal to the Court of Appeals by the petitioner is not permitted unless he obtains a certificate of appealability. 28 U.S.C. § 2253.   The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).

The application for such a certificate should first be made to the District Court.

Local Rule 22.2 provides as follows:

> At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue.   If the district judge issues a certificate, the judge shall state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253.   If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

The Third Circuit has further instructed that "as a matter of practice . . . an unsuccessful movant in a § 2255 case should in the first instance seek a certificate of appealability from the district court." United States v. Williams, 158 F.3d 736, 742 n.4 (3d Cir. 1998).

Accordingly, in the interests of judicial economy, the government requests that in addition to denying the instant petition this Court also find that the defendant has failed to make a substantial showing of a denial of any constitutional right.

In order to present a "substantial showing of a denial of any constitutional right," in order to justify an appeal, the mere allegation of a constitutional wrong, such as deprivation of the right to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error in order to present an appeal. Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996).

To establish the required showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Further, the claim must be constitutional in nature; there may be no certificate of appealability for an issue which presents only a statutory or sentencing guidelines question.  <u>United States v. Cepero</u>, 224 F.3d 256, 262-68 (3d Cir. 2000) (en banc), <u>cert. denied</u>, 121 S. Ct. 861 (2001)[30].

---

[30] Although the <u>Cepero</u> case was abrogated by <u>Gonzalez v. Thaler</u>, 132 S.Ct. 641 (2012), the issue for which <u>Cepero</u> is cited herein, was not overruled by the Supreme Court, that is, that a petitioner must make a substantial showing of the denial of a constitutional right for a certificate of appealability to issue.  The Supreme Court's ruling held that the requirement of a substantial showing was not jurisdictional in nature, as the Third Circuit had concluded, in <u>Cepero</u>.

For the reasons stated above, the defendant has not made the required showing, and therefore a certificate of appealability should be denied.  The absence of merit of the defendant's constitutional claims is plain, and not debatable.

Respectfully yours,

ZANE DAVID MEMEGER
United States Attorney

/s Roberta Benjamin
ROBERTA BENJAMIN
Assistant United States Attorney

29

# <u>INDEX OF EXHIBITS</u>

(A) Third Superseding Indictment ("the indictment");

(B) Guilty Plea Agreement

(C) Government's Change of Plea Memorandum

(D) Change of Plea Transcript

(E) Sentencing Transcript

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been

served by first-class mail, postage prepaid, upon:

ROBERT WENDELL LANDIS, PRO SE
FED. REG NO. 71763-066
F.C.C.-OTISVILLE
P.O. BOX 1000
OTISVILLE, NY 10963

/s Roberta Benjamin
ROBERTA BENJAMIN
Assistant United States Attorney

DATED: 5/20/16