# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :   CRIMINAL ACTION
                                  :
        vs.                   :
                                    :
ROBERT WENDELL LANDIS        :   NO. 14-379

PHILADELPHIA, PENNSYLVANIA

JULY 22, 2015

BEFORE:        THE HONORABLE STEWART DALZELL, J.

CHANGE OF PLEA HEARING

APPEARANCES:

                OFFICE OF THE UNITED STATES ATTORNEY
                BY:   ROBERTA BENJAMIN, ESQUIRE
                Assistant United States Attorney
                Eastern District of Pennsylvania
                Suite 1250 - 615 Chestnut Street
                Philadelphia, PA   19106
                Counsel for the Government

                THE HUGHES FIRM, LLC
                BY:   EVAN T.L. HUGHES, ESQUIRE
                1845 Walnut Street, Suite 932
                Philadelphia, PA   19103
                Counsel for the Defendant

                KATHLEEN FELDMAN, CSR, CRR, RPR, CM
                Official Court Reporter
                Room 1234 - U.S. Courthouse
                601 Market Street
                Philadelphia, PA 19106
                (215) 779-5578

        (Transcript produced by machine shorthand via C.A.T.)

```
 1   IN ATTENDANCE:

 2
                    Adam Sucheski
 3                  Federal Bureau of Investigation

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (Proceedings commenced at 9:30 a.m.)

 2              THE COURT:  Good morning, everyone.

 3              ALL COUNSEL:  Good morning, Your Honor.

 4              THE COURT:  We are together in United States of

 5    America versus Robert Wendell Landis, which is Criminal

 6    Number 14-379, and representing the Government, as she has

 7    from the beginning, is Roberta Benjamin.

 8              MS. BENJAMIN:  Good morning, Your Honor.

 9              THE COURT:  Nice to see you again.

10              And the case agent is Adam Sucheski of the FBI.

11              THE AGENT:  Yes, sir.

12              THE COURT:  Welcome to our court.

13              THE AGENT:  Thank you, sir.

14              THE COURT:  And representing Mr. Landis is Evan

15    Hughes.

16              MR. HUGHES:  Good morning, Your Honor.

17              THE COURT:  And, Mr. Landis, welcome back.  So are

18    we ready to proceed?

19              MR. HUGHES:  Yes, Judge.

20              THE COURT:  Okay, so if the defendant could come

21    forward.

22              ROBERT WENDELL LANDIS, DEFENDANT, SWORN.

23              THE COURT:  And your name is Robert Wendell,

24    W-E-N-D-E-L-L, Landis, L-A-N-D-I-S?

25              THE DEFENDANT:  Yes.
```

1          THE COURT:  And, Mr. Landis, you understand the

2    English language?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And do you read and write the English

5    language?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And you understand, sir, that you're

8    under oath now?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And that means that you must tell me the

11    truth.  Understand?

12          THE DEFENDANT:  Yeah.

13          THE COURT:  And not to rattle sabers at you, but

14    just to tell you what the story is, if you were to lie to me

15    this morning, that would be perjury or false swearing.

16    Understand?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And, of course, you have retained Mr.

19    Hughes to be your lawyer; correct?

20          THE DEFENDANT:  Yeah.

21          THE COURT:  And, Mr. Hughes, how long have you and

22    Mr. Landis been considering the possibility of a nontrial

23    resolution of this matter?

24          MR. HUGHES:  We have considered it from the outset

25    of representation.

```
1              THE COURT:  And that was when?
2              MR. HUGHES:  It was --
3              THE DEPUTY CLERK:  In March.
4              MR. HUGHES:  March, Your Honor.
5              THE COURT:  Okay.  So let's put it this way, Mr.
6    Landis.  Since Mr. Hughes has been representing you, have you
7    at any time been on any drugs or narcotics?
8              THE DEFENDANT:  No.
9              THE COURT:  And since Mr. Hughes has been your
10   lawyer in this matter, have you ever seen a psychiatrist,
11   psychologist, or mental health provider?
12             THE DEFENDANT:  No.
13             THE COURT:  And are you on any medication that a
14   doctor prescribes for you that in any way affects how you
15   think?
16             THE DEFENDANT:  No.
17             THE COURT:  So I take it -- and you've never been
18   treated for alcohol abuse?
19             THE DEFENDANT:  No.
20             THE COURT:  And I take it the Government has no
21   concerns about competency?
22             MS. BENJAMIN:  That's correct, Your Honor.
23             THE COURT:  And you have no concerns, not that
24   you're a psychiatrist --
25             MR. HUGHES:  I do not, Your Honor.
```

1          THE COURT:  So everyone is comfortable with Mr.

2    Landis' capacity to proceed?

3          MR. HUGHES:  Yes.

4          THE COURT:  And, Mr. Landis, how far did you get in

5    school?

6          THE DEFENDANT:  I have a GED.

7          THE COURT:  A GED?

8          THE DEFENDANT:  Yeah.

9          THE COURT:  And where did you obtain that?

10         THE DEFENDANT:  I attained it when?  In 2003.

11         THE COURT:  Okay.  And what school issued that GED?

12         THE DEFENDANT:  North Penn School District.

13         THE COURT:  Okay, and that's in what county?

14         THE DEFENDANT:  I believe it's Montgomery County.

15         THE COURT:  Okay.  And, of course, you have a

16   perfect right to retain Mr. Hughes as your lawyer, but I'm

17   obliged to tell you that if you could not afford his services,

18   do you understand that I would appoint a lawyer to represent

19   you for free?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And that's because you have a right to a

22   lawyer at every step of the way in your criminal case, through

23   trial and any appeal.  And through today, are you completely

24   satisfied with the services that Mr. Hughes has given you?

25         THE DEFENDANT:  I'm satisfied with Mr. Hughes, yes.

1          THE COURT:  Okay, and so you understand that if you

2   couldn't afford to pay for Mr. Hughes' services, I would

3   appoint a lawyer to represent you for free?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  Now, on three occasions, I'm

6   going to ask Ms. Benjamin to come forward.  And each time that

7   happens, I want you to listen very carefully to what she says

8   and what I say to her, because you and I will then consider

9   subjects that are raised by my conversation with the

10   prosecutor on each occasion.  So won't you gentlemen be

11   seated.

12          And, Ms. Benjamin, if you can come forward and

13   rehearse for us the charges that Mr. Landis is contemplating

14   pleading guilty to this morning, give us the elements of the

15   offenses and the statutory penalties associated with those

16   offenses.

17          MS. BENJAMIN:  Certainly, Your Honor.  The Plea

18   Agreement that we've entered into contemplates that the

19   defendant, Mr. Landis, will plead guilty to Counts One, Two,

20   and Three of the Third Superseding Indictment, and those

21   counts charge one count of possession, that's Count One, of

22   child pornography and Counts Two and Three charge receipt of

23   child pornography.

24          THE COURT:  So the elements of Count One are what?

25          MS. BENJAMIN:  The elements of Count One would be

1   that the defendant knowingly possessed one or more books,

2   magazines, periodicals, films, videotapes, or other matter

3   which contained a visual depiction; two, that the visual

4   depiction had been mailed, shipped, or transported in

5   interstate commerce by any means, including by computer, or

6   which was produced using materials which had been mailed,

7   shipped, or transported in interstate commerce; three, that

8   the production of such visual depiction involved the use of a

9   minor engaging in sexually explicit conduct; and, four, that

10   the visual depiction was of such conduct.

11          THE COURT:  And Count Two.

12          MS. BENJAMIN:  Counts Two and Three are receipt of

13   child pornography and the elements that are required are, one,

14   that the defendant received or distributed a visual depiction;

15   two, that the image depicts an actual minor engaged in

16   sexually explicit conduct; and, three, that the defendant was

17   aware of the sexually explicit nature and character and

18   materials and that the visual depictions are of a minor

19   engaging in sexually explicit conduct, and that the images

20   have been mailed, shipped, or transported in interstate or

21   foreign commerce, or produced these materials that have been

22   mailed, shipped, or transported in interstate or foreign

23   commerce.

24          THE COURT:  And the statutory penalties associated

25   with those counts.

1          MS. BENJAMIN:  The statutory penalties associated
2    with the possession count is a maximum of ten years of
3    imprisonment, no mandatory minimum of imprisonment, but a
4    mandatory minimum period of five years supervised release up
5    to a lifetime of supervised release, a $250,000 fine, and a
6    mandatory $100 special assessment.
7          Counts Two and Three each, the defendant can receive
8    a maximum of 20 years imprisonment with a mandatory minimum
9    period of five years imprisonment, a mandatory minimum period
10   of five years of supervised release up to lifetime supervised
11   release, a $250,000 fine, and $100 mandatory special
12   assessment.
13         THE COURT:  So the total statutory exposure is what?
14         MS. BENJAMIN:  50 years imprisonment with a
15   mandatory minimum of five years imprisonment, lifetime
16   supervised release, $750,000 fine, and a $300 special
17   assessment, and there's also a forfeiture notice where there's
18   one computer.
19         THE COURT:  So the forfeiture concerns the hardware?
20         MS. BENJAMIN:  Yes, the computer itself that he was
21   using.
22         THE COURT:  But not any cash?
23         MS. BENJAMIN:  No.
24         THE COURT:  Okay.  All right.  Thank you very much.
25         MS. BENJAMIN:  Thank you.

1      THE COURT:  So, Mr. Landis, if you can come back to
2  the lectern and, of course, Mr. Hughes, you're welcome to join
3  him.
4      Mr. Landis, sir, did you hear everything Ms.
5  Benjamin just said to me?
6      THE DEFENDANT:  Yes.
7      THE COURT:  And you understood what she said?
8      THE DEFENDANT:  Yes.
9      THE COURT:  And even though you're contemplating
10  pleading guilty to these three charges in Counts One, Two, and
11  Three this morning, I, nevertheless, am obliged to go over
12  with you certain basic rights every defendant has in a trial
13  even though that's not your intention this morning.
14      First of all, if we had gone to trial, you would
15  have heard me say over and over again to the jury that the law
16  presumes you innocent.  Understand?
17      THE DEFENDANT:  Yes.
18      THE COURT:  And I would tell the jury that they
19  could only convict you of any of these three counts if the
20  Government had proved you guilty beyond a reasonable doubt.
21  Understand?
22      THE DEFENDANT:  Yes.
23      THE COURT:  And, indeed, the reason I asked Ms.
24  Benjamin to give us all the elements of these offenses is
25  because I would tell the jury that all 12 members of that jury

1   would have to agree unanimously that the Government had proved

2   each and every element beyond a reasonable doubt.  Understand?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And if we had gone to trial, it would be

5   up to you to decide whether to testify.  Understand?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And if you elected not to testify, as

8   you have a right to do, I would tell the jury that, A, they

9   couldn't hold it against you, and, B, they couldn't even

10  discuss the fact that you had elected not to plead guilty.

11  Understand?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Now, of course, if you had wanted to,

14  and it would be your decision to make, not Mr. Hughes -- if

15  you wanted to tell your side of the story, you could do so.

16  Understand?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Now, in addition, if I accept your

19  guilty plea this morning, we will have no motion practice

20  having to do with the evidence-gathering phase of this case.

21  In this case, there were a number of search warrants executed,

22  and as I understand it from the Government's submission to me,

23  you yourself talked to some of the case agents.  Am I correct

24  about that?

25             THE DEFENDANT:  Yes.

1          THE COURT:  And sometimes defendants file what's

2    called motions to suppress either the physical evidence, in

3    this case, the electronic images, or the statements that

4    defendants make, but you understand that Mr. Hughes will not

5    be filing any such motions on your behalf if I accept your

6    plea.  Understand, sir?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And so if we had gone to trial, you

9    understand that Mr. Hughes would be permitted to cross-examine

10   each and every witness that the Government would call against

11   you.  Understand?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And I'm sure that would be a very

14   thorough cross-examination, but if we don't have a trial,

15   there's going to be no cross-examination.  Understand?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And, in addition, if we had gone to

18   trial, Mr. Hughes could have subpoenaed witnesses to come in

19   to the case as your witnesses, character witnesses, for

20   example, but if there's no trial, Mr. Hughes won't be

21   subpoenaing anybody.  Understand?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And I just want to pause here to make

24   100 percent certain of what is maybe an obvious point.  And

25   that is this, Mr. Landis.  This decision to plead guilty, am I

1   correct that this is your free choice?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And am I correct that you talked about

4   the case with Mr. Hughes and he answered all your questions?

5              THE DEFENDANT:  Yes.

6              THE COURT:  To your satisfaction?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And so I want to be absolutely sure of

9   this.  Am I correct that no one has, in any way, shape or

10  form, forced you to plead guilty?  Am I right about that?

11             THE DEFENDANT:  That's correct.

12             THE COURT:  So this is your free choice?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Now, that has some consequences, because

15  if the jury found you guilty of any of these three counts, Mr.

16  Hughes could have argued first to me and, if I ruled against

17  you, to the U.S. Court of Appeals that the verdict was against

18  the weight of the evidence.  But if you plead guilty, the

19  issue of your factual guilt as to these three counts will be

20  off the table for the simple reason that you will have

21  admitted that, "Yes, I committed these three crimes."

22  Understand?

23             THE DEFENDANT:  Yes.

24             THE COURT:  So the issue of your factual guilt as to

25  these three offenses will be off the table because you will

1   have admitted that, "Yes, I did it"; correct?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And so do you have a copy of the Guilty

4   Plea?

5           MR. HUGHES:  I do, Your Honor.

6           THE COURT:  And it was signed today?

7           MR. HUGHES:  It was, Judge.

8           THE COURT:  Okay, but the Acknowledgment of Rights

9   had been signed, I think, on July 9th; right?

10          MR. HUGHES:  Yes, Your Honor, and a fresh copy was

11  re-executed today.

12          THE COURT:  Okay, so they were just executed this

13  morning?

14          MR. HUGHES:  Correct.

15          THE COURT:  So, Mr. Landis, is that your signature

16  on the last page of the Guilty Plea Agreement?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And before you signed that document, you

19  went over it with Mr. Hughes?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And he explained it to your

22  satisfaction?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And so you had no questions about its

25  meaning?

1       THE DEFENDANT:  No.

2       THE COURT:  And, Mr. Hughes, just for the record,

3  that's your signature?

4       MR. HUGHES:  It is, Your Honor, on both the

5  Acknowledgement of Rights and the Guilty Plea.

6       THE COURT:  Okay.  Mr. Hughes, if you would be good

7  enough to read the very last paragraph of that agreement into

8  the record.

9       MR. HUGHES:  That would be paragraph 14?

10      THE COURT:  Yes.

11      MR. HUGHES:  "It is agreed that the parties' Guilty

12  Plea Agreement contains no additional promises, agreements or

13  understandings other than those set forth in this written

14  Guilty Plea Agreement and that no additional promises,

15  agreements or understandings will be entered into unless in

16  writing and signed by all parties."

17      THE COURT:  Okay.  And you understand that, Mr.

18  Landis?

19      THE DEFENDANT:  Yes.

20      THE COURT:  And that's true?

21      THE DEFENDANT:  Yes.

22      THE COURT:  Okay, this is the only agreement you

23  have with the U.S. Government; correct?

24      THE DEFENDANT:  Correct.

25      THE COURT:  Okay.  So what I want to do now, even

1   though I'm sure Mr. Hughes did a very thorough job of going

2   over the Plea Agreement with you, I want to ask Ms. Benjamin

3   to come forward, and for the second time, I want you to listen

4   very carefully.  Even though this may be old hat for you at

5   this late date, it's so important.  The issue of this Guilty

6   Plea Agreement is so important to you that I want to make

7   absolutely 100 percent sure that you understand it.  Okay?

8         THE DEFENDANT:  Yes.

9         THE COURT:  So won't you gentlemen be seated.

10        And, Ms. Benjamin, if you will come forward and

11  rehearse for us the essential terms of this Plea Agreement.

12       MS. BENJAMIN:  The essential terms of the Plea

13  Agreement are that the defendant will plead guilty to Counts

14  One, Two, and Three of the Third Superseding Indictment, and

15  that the Government, at the time of sentencing, will move to

16  dismiss Counts Four and Five of the Third Superseding

17  Indictment.  The Government will move for an upward variance

18  from the Guideline range which is calculated for Counts One,

19  Two, and Three.

20       THE COURT:  Because that is an offense level 28.

21       MS. BENJAMIN:  That's correct, Your Honor.

22       THE COURT:  Under paragraph 8.

23       MS. BENJAMIN:  That's correct.  The calculations,

24  obviously, are finalized by the Probation Department and

25  eventually Your Honor.  But the calculations we have put the

1   Guideline range, the anticipated Guideline range below the C

2   plea amount that we're proposing, which is 90 months

3   incarceration.

4           THE COURT:  So to that extent, because the bottom of

5   that, assuming he's Criminal History I --

6           MS. BENJAMIN:  Right.

7           THE COURT:  -- is 78 months.

8           MS. BENJAMIN:  78 to 87, I believe, is the range

9   that we're anticipating.

10          THE COURT:  Yes.

11          MS. BENJAMIN:  So if that were the case, then we've

12  agreed in the Plea Agreement that a specific sentence of 90

13  months would be appropriate, and if that's the case, it would

14  require the Government to move for an upward variance and for

15  Your Honor to agree to that.  So that's why that's in --

16          THE COURT:  But Mr. Landis has agreed to that under

17  the Agreement?

18          MS. BENJAMIN:  Yes, he has, Your Honor.

19          THE COURT:  Because the specific sentence of 90

20  months is a C plea; correct?

21          MS. BENJAMIN:  That's correct, Your Honor.

22          THE COURT:  All right.  Now, as I understand it,

23  under a C plea -- which, of course, I will take very

24  seriously, but, nevertheless, I will still want the benefit of

25  a presentence investigation report before I accept it.  But as

1   I understand it, if I accept the C plea at 90 months and

2   impose that and a fine in my discretion, and, of course, the

3   special assessment of $300, there's nothing to appeal or

4   collaterally attack; correct?

5        MS. BENJAMIN:  That's correct.  There is one more

6   aspect to this.  We've agreed in the Plea Agreement that a

7   minimum of ten years supervised release -- up to a lifetime,

8   but a minimum of ten years of supervised release with the 90

9   months imprisonment, Your Honor.  That was one other aspect of

10  the C plea.

11       THE COURT:  Okay, so you've agreed on a ten-year

12  supervised release period?

13       MS. BENJAMIN:  Minimum.

14       THE COURT:  Minimum.

15       MS. BENJAMIN:  A minimum, yes.

16       THE COURT:  Okay.  And the fine is in my discretion.

17       MS. BENJAMIN:  Yes, Your Honor.

18       THE COURT:  Which, of course, will be based on the

19  ability to pay.

20       MS. BENJAMIN:  That's correct.

21       THE COURT:  But am I not correct that other than the

22  issue of Mr. Hughes' representation in connection with this

23  proceeding and this Plea Agreement, there would be no

24  collateral attack or direct appeal if I accept the agreed-upon

25  sentence?

1        MS. BENJAMIN:  That is correct, Your Honor.

2        THE COURT:  Okay.  And, of course, the Plea

3   Agreement also provides that Mr. Landis understands the

4   obligations imposed on him under SORNA, which basically are

5   lifetime obligations; right?

6        MS. BENJAMIN:  It could be up to lifetime, yes, Your

7   Honor.  It depends upon the state in which he eventually

8   lives.

9        THE COURT:  What is the case in Pennsylvania?

10        MS. BENJAMIN:  It depends -- first the crime has to

11   be categorized, and depending upon what it is categorized as,

12   I think that will determine whether or not, you know, what the

13   requirement would be for -- and there are a lot of different

14   factors that go into that.  The fact that he's actually

15   pleaded to possession and receipt, from my understanding,

16   since there were other acts involved, that may color some of

17   what they do in terms of --

18        THE COURT:  "They" being the Commonwealth?

19        MS. BENJAMIN:  I believe it's through the state.  I

20   think it is through the state, yes, Your Honor.

21        THE COURT:  As opposed to the federal government.

22        MS. BENJAMIN:  That's correct.

23        THE COURT:  Because under SORNA, that's a federal

24   law.

25        MS. BENJAMIN:  Right.  I think it is controlled by

1   the state, though.  I know if someone moves from one state to
2   another, it can change, and that's where you have to register
3   in another state and they reevaluate and make a new
4   determination.  They can make a new determination.
5            THE COURT:  Under the federal law, you have three
6   business days to do that.
7            MS. BENJAMIN:  Right.
8            THE COURT:  Okay.  Thank you.
9            MS. BENJAMIN:  Thank you.  There are other
10  stipulations, obviously, in the Plea Agreement as to the
11  Guidelines and how we get --
12           THE COURT:  And that's what comes to a net offense
13  level of 28.
14           MS. BENJAMIN:  Right.
15           THE COURT:  And that's why the upward variance is
16  required.
17           MS. BENJAMIN:  That's correct, Your Honor.
18           THE COURT:  Okay, so let me talk with Mr. Landis
19  and, of course, Mr. Hughes.
20           So, Mr. Landis, you heard everything Ms. Benjamin
21  said?
22           THE DEFENDANT:  Yes.
23           THE COURT:  And you understood what she said?
24           THE DEFENDANT:  Yes.
25           THE COURT:  Now, I am sure that Mr. Hughes, being

1   the able defense counsel he is, did a very thorough job of

2   explaining what's going to happen with going forward to the

3   time of your sentencing under this Agreement, but I just want

4   to go through this because it's so important and it's a little

5   different because this is a so-called C plea where there's an

6   agreed-upon disposition of the 90 months and at least ten

7   years supervised release and the fine in my discretion and

8   $300 special assessment.

9           So as I was saying to Ms. Benjamin, you understand

10  that one of the consequences of pleading guilty will be that

11  you will be subject to a federal law dealing with sex

12  offenders in cases like yours.  Understand?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And no one is sure how long that

15  obligation is going to be, but it could be up to a lifetime,

16  and if you move from state to state after your release from

17  custody, you'll have to comply with cognate laws from the

18  various states where you live.  Understand?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And I don't know what Pennsylvania is

21  going to do, because that's not my job, but it's onerous, and

22  as long as you're subject to the federal law, you have three

23  business days to amend where you live and where you work and

24  things like that.  Understand?

25          THE DEFENDANT:  Yes.

1          THE COURT:  And I take it you've talked about these

2   registration laws with Mr. Hughes?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And he explained them to you?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Okay.  Now, even though my presumption

7   is that I'm going to accept the agreed-upon disposition, I'm

8   going to defer definitively doing that until the time of

9   sentencing when I get what's called a presentence

10  investigation report from a probation officer.  And you'll see

11  a draft of that presentence investigation report before I do,

12  as will Mr. Hughes, as will Ms. Benjamin and Agent Sucheski.

13  And it may well be that all the comments that people make

14  about the draft of the probation officer, the probation

15  officer will accept, and if that happens, when we get back

16  together again for sentencing, I will have, shall we say, a

17  clean presentence investigation report.  But it sometimes

18  happens that either the defendant or the Government make

19  comments that the probation officer does not accept, and if

20  that happens, at the time of sentencing, which will be in

21  October, I will do my best to decide who I think is right and

22  who I think is wrong.  And just because the probation officer

23  works for the Court does not mean that I will just rubber

24  stamp whatever he or she writes.  In real world cases, I've

25  agreed with defendants and disagreed with probation officers,

1    and if that happens, typically the sentence is less onerous.

2    Sometimes I agree with the Government and disagree with the

3    probation officer, and if that happens, it ups the ante, if

4    you will.  And then in many, many cases, I do agree with the

5    probation officer and disagree with whichever side takes

6    exception to it.

7              Now, everything I'm talking about -- and Ms.

8    Benjamin mentioned what's called an upward variance.  What

9    she's talking about is we have an Advisory Guideline range in

10   your case of 78 to 87 months, assuming you have no criminal

11   conduct in your past, and if that is correct, the agreed-upon

12   sentence of 90 months is greater than that Advisory Guideline

13   range.  And under your Plea Agreement, that's okay with you to

14   sentence you at 90 months plus the ten years supervised

15   release and the fine that I impose in my discretion plus the

16   $300 assessment.  Am I correct that that's okay with you?

17             THE DEFENDANT:  Yes.

18             THE COURT:  But sentencing in federal court is very

19   complicated business, and I just want to stress to you that

20   while I presume that I'm going to accept the Plea Agreement

21   and the disposition proposed by Mr. Hughes and the Government,

22   and there is a very high likelihood that is going to happen, I

23   nevertheless don't have to.  Understand?

24             THE DEFENDANT:  Yes.

25             THE COURT:  I could take another look at that and

1   say, "No, this is not right," and in that case, you could

2   appeal that and you could withdraw your guilty plea.

3   Understand?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And supervised release, I want to talk

6   about that.  This is in addition to the SORNA obligation under

7   federal law.  Supervised release, which will in your case last

8   for at least ten years, is a serious form of custody even

9   though it's not jail-type custody.  You'll have a probation

10  officer, it will be somebody different from the one who writes

11  the report, and you'll be subject to a number of rules, such

12  as occupational limitations that keep you from working with

13  minors; such as a duty to report to your probation officer

14  whenever he or she says so; such as that you're not going to

15  commit another crime; and, also, that you will be paying your

16  financial obligations in accordance with the installments that

17  I impose at the time of judgment.  Understand?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And I just have to point out to you that

20  those financial obligations are very serious and you have to

21  comply with the schedule that I ultimately impose when we get

22  together in October to talk about your sentence.  Understand?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And, again, I'm not rattling sabers at

25  you, but if you violate any rule of supervised release and

1    after a hearing, I find that you didn't have a good reason to

2    do that, you could go back to jail.  Understand?

3                THE DEFENDANT:  Yes.

4                THE COURT:  So supervised release is a serious form

5    of custody even though it's not jail-type custody.

6                Now, one other wrinkle.  Ms. Benjamin talked about

7    something called forfeiture.  Forfeiture is a very ancient

8    principle that actually goes back to the Old Testament, and

9    the idea is if property, in your case, computers, iPhone and

10   iPads that were used, was used in the commission of a crime,

11   in this case, a federal crime, that property automatically

12   becomes property of the sovereign, in this case, the United

13   States of America.  Understand?

14               THE DEFENDANT:  Yes.

15               THE COURT:  So forfeiture is basically guilty

16   property, if you will, and it belongs to the sovereign, in

17   this case, the United States of America.  Understand?

18               THE DEFENDANT:  Yes.

19               THE COURT:  And so that's clear to you?

20               THE DEFENDANT:  Yes.

21               THE COURT:  All right, so for the third and last

22   time, I'm going to ask Ms. Benjamin to come forward and what

23   I'm going to ask her to do now is to rehearse what the

24   Government's evidence would have been as to these three counts

25   if we had gone to trial.  So it's going to be a summary, and I

1    take it you've read the Government's memorandum that recites

2    those facts?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay, and you've gone over it with him?

5              MR. HUGHES:  I have, Your Honor.

6              THE COURT:  Okay.  So, Ms. Benjamin, if you can come

7    forward.

8              MS. BENJAMIN:  I just wanted to clarify before they

9    leave the podium, if I may, Your Honor?

10             I believe when you spoke with me, you mentioned an

11   adjusted offense level of 28.  And, actually, the way it's

12   calculated, we believe it might be a level 26 and there may be

13   a criminal history category of II and that's where we arrived

14   at the projected Guideline range.  I just wanted the record to

15   be clear.

16             THE COURT:  Okay, but I'm just taking what's in the

17   Plea Agreement, the 28 I calculated.

18             MS. BENJAMIN:  It's actually 26.  There's a

19   reduction of two points because it did not involve -- in

20   paragraph b, he did not intend to traffic in or distribute

21   such material.  So that's two levels lower.  So that's where

22   it becomes 26 in the Plea Agreement.

23             THE COURT:  Okay.  Okay, but I'm just going what's

24   on the page.

25             MS. BENJAMIN:  Yes.  Yes, Your Honor.

1           THE COURT:  Okay, so anything else from the

2    Government?

3           MS. BENJAMIN:  No, thank you.

4           THE COURT:  So do you want to rehearse the evidence?

5           MS. BENJAMIN:  Certainly.

6           THE COURT:  Okay, won't you gentlemen be seated and

7    listen very carefully, Mr. Landis, to what Ms. Benjamin is

8    going to recite for us.

9           MS. BENJAMIN:  A summary of what the Government

10   would have presented had this gone to trial would include

11   testimony from a minor victim who is now an adult.  The

12   testimony from --

13          THE COURT:  Who was 15 at the time.

14          MS. BENJAMIN:  15 at the time, yes, Your Honor.

15          THE COURT:  From back in 2012.

16          MS. BENJAMIN:  That's correct, Your Honor.  And

17   testimony also from FBI agents and forensic experts, as well

18   as individuals from Facebook and NCMEC or The National Center

19   for Missing and Exploited Children.

20          The case came about -- and this would be the

21   testimony.  In October of 2012, Facebook notified NCMEC, who

22   notified the FBI, that they had suspicious Facebook chats in

23   which a 27-year-old male, who was later identified as the

24   defendant, was communicating with a minor and was talking

25   about various sexual activities and also there was some

1   discussion of sending pics, often known as child pornography,

2   sort of an abbreviation for child pornography, from the minor

3   to the defendant.

4          Further investigation, and there would be testimony

5   about this, showed that the defendant, as I indicated, was the

6   27-year-old male who was involved in this --

7          THE COURT:  Was at the time 27?

8          MS. BENJAMIN:  That's correct, was involved in these

9   Facebook chats and also with receipt of this child pornography

10  from the minor.

11         In particular, search warrants were executed on

12  Yahoo, as well as Facebook, and information was received that

13  showed that the 15-year-old female had sent messages with

14  child pornography images on March 22nd, 2012, to certain

15  specific e-mail accounts of the defendant.  They're noted on

16  page 4 of the Government's Change of Plea Memorandum.

17  Feliciah96@yahoo.com to the defendant at xtictac22@yahoo.com,

18  and that relates to Count Two of the Third Superseding

19  Indictment.  And, also, similar sort of CP or child

20  pornography images were sent on July 20 of 2012 from the minor

21  using a different e-mail account, feliciah47ram@gmail.com, to

22  the defendant at a different e-mail account,

23  yourfantasy1207@yahoo.com, and that makes the basis for Count

24  Three of the Third Superseding Indictment.

25         The possession charge on the Third Superseding

1    Indictment, Count One, has the return date on the Yahoo search
2    warrant of March 26, 2012, as the date on which we know for
3    certain that the defendant possessed the child pornography.
4    And this, again, is discussed on page 4 of the Government's
5    memorandum.

6          So, as I indicated, a search warrant was executed on
7    Facebook and hundreds and hundreds of Facebook chats, some of
8    which I think Your Honor has seen, and they were inappropriate
9    discussions between an adult, the defendant, and the minor
10   victim at the time.  And the chats were reviewed, and on
11   page 5 of the memorandum, it gives sort of an indication of an
12   example of one of those chats that occurred on April 29th,
13   2012, in which the defendant is asking again for pics.  So he
14   is requesting from the minor the pics and then the pics were,
15   of course, sent.  And these pics were of sexual exploitation,
16   a lascivious exploitation of the minor, and they were sent
17   from the minor to the defendant.  So those were the receipts.

18         THE COURT:  And the minor at the time was in Chester
19   County?

20         MS. BENJAMIN:  Yes, in Chester County, Pennsylvania.

21         THE COURT:  And later moved to Georgia.

22         MS. BENJAMIN:  Georgia.  And there was still
23   communication between the minor and the defendant based on
24   telephonic records we received, at least 79 times during the
25   period in this 2012 period where she had moved, and by the end

1   of the summer of 2012, there was still communication with the

2   defendant.

3          There was also -- I itemized most, if not all, on

4   pages 5, 6, and 7 of my memorandum of the description of the

5   images and I won't repeat them for the record unless Your

6   Honor wants me to.

7          THE COURT:  No, I read them and I think Mr. Landis

8   read them.

9          MS. BENJAMIN:  Yes, Your Honor, just for the record,

10  so it's clear in terms of numbers of pictures in what we were

11  talking about in this instance.  Further investigation

12  revealed that the defendant communicated with the minor and

13  met the minor.  There was a communication on computer, iPhone,

14  iPad, as well as there was a Gateway computer, which is

15  mentioned in the forfeiture count of the Indictment, and that

16  is specified with a particular serial number and that's the

17  item that we're asking forfeiture of with respect to that

18  item.

19         In addition, there was a diary that the minor at the

20  time kept in which the defendant's name appears and there's

21  various designations that corroborate the sexual activity that

22  they engaged in.

23         And, finally, Your Honor, the Government would

24  present evidence that the defendant was interviewed -- we

25  might not or might not at trial -- in which he admits to

1    knowing the girl eventually and also the e-mail accounts that

2    were his.

3              THE COURT:  So to that extent, they were admissions.

4              MS. BENJAMIN:  Yes, Your Honor.

5              THE COURT:  Okay.  Anything else?

6              MS. BENJAMIN:  No, thank you.

7              THE COURT:  Thank you.

8              So, Mr. Landis, if you can come back and, Mr.

9    Hughes, of course, you're welcome to join him.

10             So, Mr. Landis, did you hear everything Ms. Benjamin

11   just said to me?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And you understood what she said?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And, of course, there was reference to

16   the written document and you've read the written document that

17   the Government supplied me --

18             THE DEFENDANT:  Yes.

19             THE COURT:  -- which gives more detail and

20   supplements what Ms. Benjamin just read?  You read that;

21   correct?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And you understood it?

24             THE DEFENDANT:  Yes.

25             THE COURT:  So let me ask you this.  May I rely on

1    the truth of what Ms. Benjamin just said to me and put in the

2    factual basis in her memorandum?

3              THE DEFENDANT:  Yes.

4              THE COURT:  So let me put it to you affirmatively.

5    May I rely on the truth of what was said just now and in the

6    written submission?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Okay, so I may rely on that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  All right, let me ask the Government a

11   couple of things before I accept your plea.

12             Ms. Benjamin, on this record, is the Government

13   satisfied that this plea is knowing, voluntary, and

14   intelligent?

15             MS. BENJAMIN:  Yes, Your Honor.

16             THE COURT:  And is there any subject that you

17   believe I should go over with Mr. Landis that I may have

18   overlooked?

19             MS. BENJAMIN:  The only thing I can think about,

20   Your Honor, or contemplate is the Missouri --

21             THE COURT:  Pardon me?

22             MS. BENJAMIN:  The only thing I'm thinking about is

23   the Missouri versus Frye issue, because there was an earlier

24   plea offer, a written plea offer.  It was with a different

25   attorney, but it was a lower plea offer that was rejected.  I

1    just thought the record should reflect that there was an

2    earlier plea.  We, in fact, came to court thinking that it was

3    going to be a guilty plea hearing with Tom Bellwoar as his

4    counsel.

5              THE COURT:  But that's ancient history.

6              MS. BENJAMIN:  That is ancient history.  That's the

7    only thing I can contemplate.  But other than that, Your

8    Honor, there's nothing else.

9              THE COURT:  Okay.  Mr. Hughes, you've been living

10   with this case for many months now as retained counsel.  Are

11   you satisfied that your client's plea is knowing, voluntary,

12   and intelligent as to these three charges?

13             MR. HUGHES:  It is, Judge.

14             THE COURT:  Okay.  And am I correct that you gave

15   Mr. Landis a preview of what I would cover in this proceeding?

16             MR. HUGHES:  I did.

17             THE COURT:  Okay.  So, Mr. Landis, let me ask you

18   this since Mr. Hughes gave you a preview of what I covered

19   this morning.  We've covered a lot of ground, to be sure.

20             Notwithstanding the fact that Mr. Hughes gave you

21   this preview, do you have any questions of me about what we

22   talked about?

23             THE DEFENDANT:  No.

24             THE COURT:  So you feel you understand what we

25   talked about this morning?

1           THE DEFENDANT:  Yes.

2           THE COURT:  The very important reason why we get

3    together at such length is because this is such an important

4    part of your future.  Understand?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Okay, so you have no questions of me?

7           THE DEFENDANT:  No.

8           THE COURT:  All right.  Well, I am now prepared to

9    make certain formal findings and I'm going to do so now.

10          First of all, I find that the defendant, Robert

11   Wendell Landis, is competent to plead.  There is not an iota

12   of doubt in that department; that Mr. Landis' plea is

13   voluntary and not the result of force or threats or any

14   promises apart from what's contained in the Plea Agreement

15   that we've gone over at length on this record.

16          I also find that there is an ample factual basis for

17   the plea of guilty as to the three charges, that Mr. Landis

18   understands those three charges, his legal rights, and the

19   maximum statutory penalties, as well as the likelihood of a

20   five-year mandatory minimum penalty under the C plea.

21          I find, too, that if I accept the C plea, Mr. Landis

22   waives his rights to an appeal and very much limits his right

23   to collateral attack of that sentence if I indeed accept the

24   90-month sentence in the C plea.

25          So I think we're ready to take the plea.  Mrs.

1  Adler.

2          THE DEPUTY CLERK:  Robert Wendell Landis, you have

3  previously entered a plea of not guilty to the Third

4  Superseding Indictment in Criminal Number 2014 379, charging

5  you with possession of child pornography, in violation of

6  Title 18, United States Code, Section 2252(a)(4)(B), and

7  receipt of child pornography, in violation of Title 18, United

8  States Code, Section 2252(a)(2).

9          How say you now as to Counts One, Two, and Three,

10 guilty or not guilty?

11          THE DEFENDANT:  Guilty.

12          THE COURT:  All right, and I will order that

13 presentence investigation report to assist me in evaluating

14 the C plea, and I will set as the time for sentencing, Friday,

15 October 23, 2015, at 11 a.m., in this courtroom.  I take it

16 there's no objection to the detention continuing?

17          MR. HUGHES:  No objection, Your Honor.

18          THE COURT:  Okay.  Anything else from the

19 Government?

20          MS. BENJAMIN:  No.  Thank you very much, Your Honor.

21          THE COURT:  Thank you all very much for your hard

22 work and we'll look forward to seeing you in October.

23          MR. HUGHES:  Thank you, Your Honor.

24          MS. BENJAMIN:  Thank you, Your Honor.

25          (Proceedings concluded at 10:30 a.m.)

```
 1
 2                    C E R T I F I C A T E
 3
 4          I certify that the foregoing is a correct transcript
 5    from the record of the proceedings in the above-entitled
 6    matter.
 7
 8
 9                              _____
10                              Kathleen Feldman, CSR, CRR, RPR, CM
                                Official Court Reporter
11
12    Date: _____
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**$**

$100 [2] - 9:6, 9:11
$250,000 [2] - 9:5, 9:11
$300 [4] - 9:16, 18:3, 21:8, 23:16
$750,000 [1] - 9:16

**1**

100 [2] - 12:24, 16:7
10:30 [1] - 35:25
11 [1] - 35:15
12 [1] - 10:25
1234 [1] - 1:23
1250 [1] - 1:16
14 [1] - 15:9
14-379 [2] - 1:6, 3:6
15 [2] - 27:13, 27:14
15-year-old [1] - 28:13
18 [2] - 35:6, 35:7
1845 [1] - 1:19
19103 [1] - 1:20
19106 [2] - 1:16, 1:24

**2**

20 [2] - 9:8, 28:20
2003 [1] - 6:10
2012 [8] - 27:15, 27:21, 28:14, 28:20, 29:2, 29:13, 29:25, 30:1
2014 [1] - 35:4
2015 [2] - 1:8, 35:15
215 [1] - 1:24
22 [1] - 1:8
2252(a)(2) [1] - 35:8
2252(a)(4)(B) [1] - 35:6
22nd [1] - 28:14
23 [1] - 35:15
26 [4] - 26:12, 26:18, 26:22, 29:2
27 [1] - 28:7
27-year-old [1] - 27:23, 28:6
28 [4] - 16:20, 20:13, 26:11, 26:17
29th [1] - 29:12

**3**

379 [1] - 35:4

**4**

4 [2] - 28:16, 29:4

**5**

5 [2] - 29:11, 30:4
50 [1] - 9:14

**6**

6 [1] - 30:4
601 [1] - 1:23
615 [1] - 1:16

**7**

7 [1] - 30:4
779-5578 [1] - 1:24
78 [3] - 17:7, 17:8, 23:10
79 [1] - 29:24

**8**

8 [1] - 16:22
87 [2] - 17:8, 23:10

**9**

90 [8] - 17:2, 17:12, 17:19, 18:1, 18:8, 21:6, 23:12, 23:14
90-month [1] - 34:24
932 [1] - 1:19
9:30 [1] - 3:1
9th [1] - 14:9

**A**

a.m [3] - 3:1, 35:15, 35:25
abbreviation [1] - 28:2
ability [1] - 18:19
able [1] - 21:1
above-entitled [1] - 36:5
absolutely [2] - 13:8, 16:7
abuse [1] - 5:18
accept [12] - 11:18, 12:5, 17:25, 18:1, 18:24, 22:7, 22:15, 22:19, 23:20, 32:11,

34:21, 34:23
accordance [1] - 24:16
account [2] - 28:21, 28:23
accounts [2] - 28:15, 31:1
Acknowledgement [1] - 15:5
Acknowledgment [1] - 14:8
ACTION [1] - 1:4
activities [1] - 27:25
activity [1] - 30:21
acts [1] - 19:16
actual [1] - 8:15
Adam [2] - 2:2, 3:10
addition [4] - 11:18, 12:17, 24:6, 30:19
additional [2] - 15:12, 15:14
adjusted [1] - 26:11
Adler [1] - 35:1
admissions [1] - 31:3
admits [1] - 30:25
admitted [2] - 13:21, 14:1
adult [2] - 27:11, 29:9
Advisory [2] - 23:9, 23:12
affects [1] - 5:14
affirmatively [1] - 32:4
afford [2] - 6:17, 7:2
agent [1] - 3:10
Agent [1] - 22:12
AGENT [2] - 3:11, 3:13
agents [2] - 11:23, 27:17
agree [4] - 11:1, 17:15, 23:2, 23:4
agreed [10] - 15:11, 17:12, 17:16, 18:6, 18:11, 18:24, 21:6, 22:7, 22:25, 23:11
agreed-upon [4] - 18:24, 21:6, 22:7, 23:11
Agreement [20] - 7:18, 14:16, 15:12, 15:14, 16:2, 16:6, 16:11, 16:13, 17:12, 17:17, 18:6, 18:23, 19:3, 20:10, 21:3, 23:13, 23:20, 26:17, 26:22, 34:14
agreement [2] - 15:7,

15:22
agreements [2] - 15:12, 15:15
alcohol [1] - 5:18
ALL [1] - 3:3
amend [1] - 21:23
AMERICA [1] - 1:4
America [3] - 3:5, 25:13, 25:17
amount [1] - 17:2
ample [1] - 34:16
ancient [3] - 25:7, 33:5, 33:6
answered [1] - 13:4
ante [1] - 23:3
anticipated [1] - 17:1
anticipating [1] - 17:9
apart [1] - 34:14
appeal [5] - 6:23, 18:3, 18:24, 24:2, 34:22
Appeals [1] - 13:17
APPEARANCES [1] - 1:13
appoint [2] - 6:18, 7:3
appropriate [1] - 17:13
April [1] - 29:12
argued [1] - 13:16
arrived [1] - 26:13
aspect [2] - 18:6, 18:9
assessment [6] - 9:6, 9:12, 9:17, 18:3, 21:8, 23:16
assist [1] - 35:13
assistant [1] - 1:15
associated [3] - 7:15, 8:24, 9:1
assuming [2] - 17:5, 23:10
attack [3] - 18:4, 18:24, 34:23
attained [1] - 6:10
ATTENDANCE [1] - 2:1
attorney [1] - 32:25
ATTORNEY [1] - 1:14
Attorney [1] - 1:15
automatically [1] - 25:11
aware [1] - 8:17

**B**

based [2] - 18:18,

29:23
basic [1] - 10:12
basis [3] - 28:24, 32:2, 34:16
becomes [2] - 25:12, 26:22
BEFORE [1] - 1:10
beginning [1] - 3:7
behalf [1] - 12:5
Bellwoar [1] - 33:3
belongs [1] - 25:16
below [1] - 17:1
benefit [1] - 17:24
BENJAMIN [54] - 1:14, 3:8, 5:22, 7:17, 7:25, 8:12, 9:1, 9:14, 9:20, 9:23, 9:25, 16:12, 16:21, 16:23, 17:6, 17:8, 17:11, 17:18, 17:21, 18:5, 18:13, 18:15, 18:17, 18:20, 19:1, 19:6, 19:10, 19:19, 19:22, 19:25, 20:7, 20:9, 20:14, 20:17, 26:8, 26:18, 26:25, 27:3, 27:5, 27:9, 27:14, 27:16, 28:8, 29:20, 29:22, 30:9, 31:4, 31:6, 32:15, 32:19, 32:22, 33:6, 35:20, 35:24
Benjamin [19] - 3:7, 7:6, 7:12, 10:5, 10:24, 16:2, 16:10, 20:20, 21:9, 22:12, 23:8, 25:6, 25:22, 26:6, 27:7, 31:10, 31:20, 32:1, 32:12
best [1] - 22:21
between [2] - 29:9, 29:23
beyond [2] - 10:20, 11:2
books [1] - 8:1
bottom [1] - 17:4
Bureau [1] - 2:3
business [3] - 20:6, 21:23, 23:19
BY [1] - 1:19

**C**

C.A.T [1] - 1:25
calculated [3] - 16:18, 26:12, 26:17
calculations [2] - 16:23, 16:25
capacity [1] - 6:2

carefully [3] - 7:7, 16:4, 27:7
case [20] - 3:10, 6:22, 11:20, 11:21, 11:23, 12:3, 12:19, 13:4, 17:11, 17:13, 19:9, 23:10, 24:1, 24:7, 25:9, 25:11, 25:12, 25:17, 27:20, 33:10
cases [3] - 21:12, 22:24, 23:4
cash [1] - 9:22
categorized [2] - 19:11
category [1] - 26:13
Center [1] - 27:18
certain [5] - 10:12, 12:24, 28:14, 29:3, 34:9
certainly [2] - 7:17, 27:5
certify [1] - 36:4
CHANGE [1] - 1:11
change [1] - 20:2
Change [1] - 28:16
character [2] - 8:17, 12:19
charge [3] - 7:21, 7:22, 28:25
charges [5] - 7:13, 10:10, 33:12, 34:17, 34:18
charging [1] - 35:4
chats [5] - 27:22, 28:9, 29:7, 29:10, 29:12
Chester [2] - 29:18, 29:20
Chestnut [1] - 1:16
child [11] - 7:22, 7:23, 8:13, 28:1, 28:2, 28:9, 28:14, 28:20, 29:3, 35:5, 35:7
Children [1] - 27:19
choice [2] - 13:1, 13:12
clarify [1] - 26:8
clean [1] - 22:17
clear [3] - 25:19, 26:15, 30:10
CLERK [2] - 5:3, 35:2
client's [1] - 33:11
CM [2] - 1:22, 36:10
Code [2] - 35:6, 35:8
cognate [1] - 21:17
collateral [1] - 18:24, 34:23
collaterally [1] - 18:4

color [1] - 19:16
comfortable [1] - 6:1
commenced [1] - 3:1
comments [2] - 22:13, 22:19
commerce [4] - 8:5, 8:7, 8:21, 8:23
commission [1] - 25:10
commit [1] - 24:15
committed [1] - 13:21
Commonwealth [1] - 19:18
communicated [1] - 30:13
communicating [1] - 27:24
communication [3] - 29:23, 30:1, 30:14
competency [1] - 5:21
competent [1] - 34:11
completely [1] - 6:23
complicated [1] - 23:19
comply [2] - 21:17, 24:21
computer [5] - 8:5, 9:18, 9:20, 30:14, 30:15
computers [1] - 25:9
concerns [3] - 5:21, 5:23, 9:19
concluded [1] - 35:25
conduct [5] - 8:9, 8:10, 8:16, 8:19, 23:11
connection [1] - 18:22
consequences [2] - 13:14, 21:10
consider [1] - 7:8
considered [1] - 4:24
considering [1] - 4:22
contained [2] - 8:3, 34:14
contains [1] - 15:12
contemplate [2] - 32:20, 33:7
contemplates [1] - 7:18
contemplating [2] - 7:13, 10:9
continuing [1] - 35:16
controlled [1] -

19:25
conversation [1] - 7:9
convict [1] - 10:19
copy [2] - 14:3, 14:10
correct [29] - 4:19, 5:22, 11:23, 13:1, 13:3, 13:9, 13:11, 14:1, 14:14, 15:23, 15:24, 16:21, 16:23, 17:20, 17:21, 18:4, 18:5, 18:20, 18:21, 19:1, 19:22, 20:17, 23:11, 23:16, 27:16, 28:8, 31:21, 33:14, 36:4
corroborate [1] - 30:21
COUNSEL [1] - 3:3
counsel [3] - 21:1, 33:4, 33:10
Counsel [2] - 1:17, 1:20
count [3] - 7:21, 9:2, 20:15
Count [7] - 7:21, 7:24, 7:25, 8:11, 28:18, 28:24, 29:1
Counts [9] - 7:19, 7:22, 8:12, 9:7, 10:10, 16:13, 16:16, 16:18, 35:9
counts [6] - 7:21, 8:25, 10:19, 13:15, 13:19, 25:24
county [1] - 6:13
County [3] - 6:14, 29:19, 29:20
couple [1] - 32:11
course [12] - 4:18, 6:15, 10:2, 11:13, 17:23, 18:2, 18:18, 19:2, 20:19, 29:15, 31:9, 31:15
COURT [152] - 1:1, 3:2, 3:4, 3:9, 3:12, 3:14, 3:17, 3:20, 3:23, 4:1, 4:4, 4:7, 4:10, 4:13, 4:18, 4:21, 5:1, 5:5, 5:9, 5:13, 5:17, 5:20, 5:23, 6:1, 6:4, 6:7, 6:9, 6:11, 6:13, 6:15, 6:21, 7:1, 7:5, 7:24, 8:11, 8:24, 9:13, 9:19, 9:22, 9:24, 10:1, 10:7, 10:9, 10:18, 10:23, 11:4, 11:7, 11:13, 11:18, 12:1, 12:8, 12:13, 12:17,

12:23, 13:3, 13:6, 13:8, 13:12, 13:14, 13:24, 14:3, 14:6, 14:8, 14:12, 14:15, 14:18, 14:21, 14:24, 15:2, 15:6, 15:10, 15:17, 15:20, 15:22, 15:25, 16:9, 16:20, 16:22, 17:4, 17:7, 17:10, 17:16, 17:19, 17:22, 18:11, 18:14, 18:16, 18:18, 18:21, 19:2, 19:9, 19:18, 19:21, 19:23, 20:5, 20:8, 20:12, 20:15, 20:18, 20:23, 20:25, 21:14, 21:20, 22:1, 22:4, 22:6, 23:18, 23:25, 24:5, 24:19, 24:24, 25:4, 25:15, 25:19, 25:21, 26:4, 26:6, 26:16, 26:23, 27:1, 27:4, 27:6, 27:13, 27:15, 28:7, 29:18, 29:21, 30:7, 31:3, 31:5, 31:7, 31:13, 31:15, 31:19, 31:23, 31:25, 32:4, 32:8, 32:10, 32:16, 32:21, 33:5, 33:9, 33:14, 33:17, 33:24, 34:2, 34:6, 34:8, 35:12, 35:18, 35:21
Court [4] - 1:22, 13:17, 22:23, 36:10
court [3] - 3:12, 23:18, 33:2
Courthouse [1] - 1:23
courtroom [1] - 35:15
cover [1] - 33:15
covered [2] - 33:18, 33:19
CP [1] - 28:19
crime [4] - 19:10, 24:15, 25:10, 25:11
crimes [1] - 13:21
Criminal [3] - 3:5, 17:5, 35:4
CRIMINAL [1] - 1:4
criminal [3] - 6:22, 23:10, 26:13
cross [3] - 12:9, 12:14, 12:15
cross-examination [2] - 12:14, 12:15
cross-examine [1] - 12:9
CRR [2] - 1:22, 36:10

CSR [2] - 1:22, 36:10
custody [5] - 21:17, 24:8, 24:9, 25:5

D

DALZELL [1] - 1:10
date [3] - 16:5, 29:1, 29:2
Date [1] - 36:12
days [2] - 20:6, 21:23
dealing [1] - 21:11
decide [2] - 11:5, 22:21
decision [2] - 11:14, 12:25
defendant [24] - 3:20, 7:19, 8:1, 8:14, 8:16, 9:7, 10:12, 16:13, 22:18, 27:24, 28:3, 28:5, 28:15, 28:17, 28:22, 29:3, 29:9, 29:13, 29:17, 29:23, 30:2, 30:12, 30:24, 34:10
Defendant [1] - 1:20
DEFENDANT [78] - 3:22, 3:25, 4:3, 4:6, 4:9, 4:12, 4:17, 4:20, 5:8, 5:12, 5:16, 5:19, 6:6, 6:8, 6:10, 6:12, 6:14, 6:20, 6:25, 7:4, 10:6, 10:8, 10:17, 10:22, 11:3, 11:6, 11:12, 11:17, 11:25, 12:7, 12:12, 12:16, 12:22, 13:2, 13:5, 13:7, 13:11, 13:13, 13:23, 14:2, 14:17, 14:20, 14:23, 15:1, 15:19, 15:21, 15:24, 16:8, 20:22, 20:24, 21:13, 21:19, 21:25, 22:3, 22:5, 23:17, 23:24, 24:4, 24:18, 24:23, 25:3, 25:14, 25:18, 25:20, 26:3, 31:12, 31:14, 31:18, 31:22, 31:24, 32:3, 32:7, 32:9, 33:23, 34:1, 34:5, 34:7, 35:11
defendant's [1] - 30:20
defendants [3] - 12:1, 12:4, 22:25
defense [1] - 21:1
defer [1] - 22:8
definitively [1] - 22:8

department [1] - 34:12
Department [1] - 16:24
depiction [5] - 8:3, 8:4, 8:8, 8:10, 8:14
depictions [1] - 8:18
depicts [1] - 8:15
DEPUTY [2] - 5:3, 35:2
description [1] - 30:4
designations [1] - 30:21
detail [1] - 31:19
detention [1] - 35:16
determination [1] - 20:4
determine [1] - 19:12
diary [1] - 30:19
different [6] - 19:13, 21:5, 24:10, 28:21, 28:22, 32:24
direct [1] - 18:24
disagree [2] - 23:2, 23:5
disagreed [1] - 22:25
discretion [4] - 18:2, 18:16, 21:7, 23:15
discuss [1] - 11:10
discussed [1] - 29:4
discussion [1] - 28:1
discussions [1] - 29:9
dismiss [1] - 16:16
disposition [3] - 21:6, 22:7, 23:21
distribute [1] - 26:20
distributed [1] - 8:14
DISTRICT [2] - 1:1, 1:2
District [2] - 1:15, 6:12
doctor [1] - 5:14
document [3] - 14:18, 31:16
doubt [3] - 10:20, 11:2, 34:12
draft [2] - 22:11, 22:14
drugs [1] - 5:7
during [1] - 29:24
duty [1] - 24:13

E

e-mail [4] - 28:15, 28:21, 28:23, 31:1
EASTERN [1] - 1:2

Eastern [1] - 1:15
either [2] - 12:2, 22:18
elected [2] - 11:7, 11:10
electronic [1] - 12:3
element [1] - 11:2
elements [5] - 7:14, 7:24, 7:25, 8:13, 10:24
end [1] - 29:25
engaged [2] - 8:15, 30:22
engaging [2] - 8:9, 8:19
English [2] - 4:2, 4:4
entered [3] - 7:18, 15:15, 35:3
entitled [1] - 36:5
ESQUIRE [2] - 1:14, 1:19
essential [2] - 16:11, 16:12
evaluating [1] - 35:13
EVAN [1] - 1:19
Evan [1] - 3:14
eventually [3] - 16:25, 19:7, 31:1
evidence [5] - 11:20, 12:2, 13:18, 25:24, 27:4, 30:24
evidence-gathering [1] - 11:20
examination [2] - 12:14, 12:15
examine [1] - 12:9
example [2] - 12:20, 29:12
exception [1] - 23:6
executed [5] - 11:21, 14:11, 14:12, 28:11, 29:6
experts [1] - 27:17
explained [2] - 14:21, 22:4
explaining [1] - 21:2
explicit [4] - 8:9, 8:16, 8:17, 8:19
exploitation [2] - 29:15, 29:16
Exploited [1] - 27:19
exposure [1] - 9:13
extent [2] - 17:4, 31:3

F

Facebook [7] -

27:18, 27:21, 27:22, 28:9, 28:12, 29:7
fact [4] - 11:10, 19:14, 33:2, 33:20
factors [1] - 19:14
facts [1] - 26:2
factual [4] - 13:19, 13:24, 32:2, 34:16
false [1] - 4:15
far [1] - 6:4
FBI [3] - 3:10, 27:17, 27:22
federal [2] - 19:21, 19:23, 20:5, 21:11, 21:22, 23:18, 24:7, 25:11
Federal [1] - 2:3
Feldman [1] - 36:10
FELDMAN [1] - 1:22
feliciah47ram@gmail.com [1] - 28:22
feliciah96@yahoo.com [1] - 28:17
female [1] - 28:13
file [1] - 12:1
filing [1] - 12:5
films [1] - 8:2
finalized [1] - 16:24
finally [1] - 30:23
financial [2] - 24:16, 24:20
findings [1] - 34:9
fine [7] - 9:5, 9:11, 9:16, 18:2, 18:16, 21:7, 23:15
FIRM [1] - 1:18
first [4] - 10:14, 13:16, 19:10, 34:10
Five [1] - 16:16
five [5] - 9:4, 9:9, 9:10, 9:15, 34:20
five-year [1] - 34:20
FOR [1] - 1:2
force [1] - 34:13
forced [1] - 13:10
foregoing [1] - 36:4
foreign [2] - 8:21, 8:22
forensic [1] - 27:17
forfeiture [7] - 9:17, 9:19, 25:7, 25:15, 30:15, 30:17
form [3] - 13:10, 24:8, 25:4
formal [1] - 34:9
forth [1] - 15:13
forward [9] - 3:21, 7:6, 7:12, 16:3, 16:10, 21:2, 25:22, 26:7, 35:22

four [1] - 8:9
Four [1] - 16:16
free [4] - 6:19, 7:3, 13:1, 13:12
fresh [1] - 14:10
Friday [1] - 35:14
Frye [1] - 32:23
future [1] - 34:4

G

Gateway [1] - 30:15
gathering [1] - 11:20
GED [3] - 6:6, 6:7, 6:11
gentlemen [3] - 7:10, 16:9, 27:6
Georgia [2] - 29:21, 29:22
girl [1] - 31:1
given [1] - 6:24
government [1] - 19:21
Government [20] - 1:17, 3:6, 5:20, 10:20, 11:1, 12:10, 15:23, 16:15, 16:17, 17:14, 22:18, 23:2, 23:21, 27:2, 27:9, 30:23, 31:17, 32:10, 32:12, 35:19
Government's [5] - 11:22, 25:24, 26:1, 28:16, 29:4
greater [1] - 23:12
ground [1] - 33:19
Guideline [6] - 16:18, 17:1, 23:9, 23:12, 26:14
Guidelines [1] - 20:11
guilt [1] - 13:19, 13:24
guilty [20] - 7:14, 7:19, 10:10, 10:20, 11:10, 11:19, 12:25, 13:10, 13:15, 13:18, 16:13, 21:10, 24:2, 25:15, 33:3, 34:17, 35:3, 35:10, 35:11
Guilty [6] - 14:3, 14:16, 15:5, 15:11, 15:14, 16:5

H

hard [1] - 35:21
hardware [1] - 9:19
hat [1] - 16:4

health [1] - 5:11
hear [2] - 10:4, 31:10
heard [2] - 10:15, 20:20
HEARING [1] - 1:11
hearing [2] - 25:1, 33:3
high [1] - 23:22
History [1] - 17:5
history [3] - 26:13, 33:5, 33:6
hold [2] - 11:9, 16:4
Honor [38] - 3:3, 3:8, 3:16, 5:4, 5:22, 5:25, 5:17, 14:5, 14:10, 15:4, 16:21, 16:25, 17:15, 17:18, 17:21, 18:9, 18:17, 19:1, 19:7, 19:20, 20:17, 26:5, 26:9, 26:25, 27:14, 27:16, 29:8, 30:6, 30:9, 30:23, 31:4, 32:15, 32:20, 33:8, 35:17, 35:20, 35:23, 35:24
HONORABLE [1] - 1:10
Hughes [29] - 3:15, 4:19, 4:21, 5:6, 5:9, 6:16, 6:24, 6:25, 10:2, 11:14, 12:4, 12:9, 12:18, 12:20, 13:4, 13:16, 14:19, 15:2, 15:6, 16:1, 20:19, 20:25, 22:2, 22:12, 23:21, 31:9, 33:9, 33:18, 33:20
HUGHES [21] - 1:18, 1:19, 3:16, 3:19, 4:24, 5:2, 5:4, 5:25, 6:3, 14:5, 14:7, 14:10, 14:14, 15:4, 15:9, 15:11, 26:5, 33:13, 33:16, 35:17, 35:23
Hughes' [2] - 7:2, 18:22
hundreds [2] - 29:7

I

idea [1] - 25:9
identified [1] - 27:23
II [1] - 26:13
image [1] - 8:15
images [5] - 8:19, 12:3, 28:14, 28:20, 30:5
important [5] - 16:5, 16:6, 21:4, 34:2, 34:3

impose [4] - 18:2, 23:15, 24:17, 24:21
Imposed [1] - 19:4
Imprisonment [7] - 9:3, 9:8, 9:9, 9:14, 9:15, 18:9
IN [2] - 1:1, 2:1
inappropriate [1] - 29:8
Incarceration [1] - 17:3
include [1] - 27:10
including [1] - 8:5
indeed [2] - 10:23, 34:23
indicated [2] - 28:5, 29:6
indication [1] - 29:11
indictment [8] - 7:20, 16:14, 16:17, 28:19, 28:24, 29:1, 30:16, 35:4
individuals [1] - 27:18
information [1] - 28:12
innocent [1] - 10:16
installments [1] - 24:16
instance [1] - 30:11
intelligent [2] - 32:14, 33:12
intend [1] - 26:20
intention [1] - 10:13
interstate [4] - 8:5, 8:7, 8:20, 8:22
interviewed [1] - 30:24
investigation [1] - 2:3
investigation [7] - 17:25, 22:10, 22:11, 22:17, 28:4, 30:12, 35:13
involve [1] - 26:19
involved [4] - 8:8, 19:16, 28:6, 28:8
iota [1] - 34:11
iPad [1] - 30:14
iPads [1] - 25:10
iPhone [2] - 25:9, 30:14
issue [5] - 13:19, 13:24, 16:5, 18:22, 32:23
issued [1] - 6:11
item [2] - 30:17, 30:18
itemized [1] - 30:3
itself [1] - 9:20

**J**

jail [3] - 24:9, 25:2, 25:5
jail-type [2] - 24:9, 25:5
job [3] - 16:1, 21:1, 21:21
join [2] - 10:2, 31:9
Judge [3] - 3:19, 14:7, 33:13
judgment [1] - 24:17
JULY [1] - 1:8
July [2] - 14:9, 28:20
jury [6] - 10:15, 10:18, 10:25, 11:8, 13:15

**K**

Kathleen [1] - 36:10
KATHLEEN [1] - 1:22
keep [1] - 24:12
kept [1] - 30:20
knowing [3] - 31:1, 32:13, 33:11
knowingly [1] - 8:1
known [1] - 28:1

**L**

Landis [30] - 3:5, 3:14, 3:17, 3:24, 4:1, 4:22, 5:6, 6:4, 7:13, 7:19, 10:1, 10:4, 12:25, 14:15, 15:18, 17:16, 19:3, 20:18, 20:20, 27:7, 30:7, 31:8, 31:10, 32:17, 33:15, 33:17, 34:11, 34:17, 34:21, 35:2
LANDIS [3] - 1:6, 3:22, 3:24
Landis' [2] - 6:2, 34:12
language [2] - 4:2, 4:5
lascivious [1] - 29:16
last [4] - 14:16, 15:7, 24:7, 25:21
late [1] - 16:5
law [6] - 10:15, 19:24, 20:5, 21:11, 21:22, 24:7
laws [2] - 21:17, 22:2
lawyer [6] - 4:19,

5:10, 6:16, 6:18, 6:22, 7:3
least [3] - 21:6, 24:8, 29:24
leave [1] - 26:9
lectern [1] - 10:2
legal [1] - 34:18
length [2] - 34:3, 34:15
less [1] - 23:1
level [4] - 16:20, 20:13, 26:11, 26:12
levels [1] - 26:21
lie [1] - 4:14
lifetime [7] - 9:5, 9:10, 9:15, 18:7, 19:5, 19:6, 21:15
likelihood [2] - 23:22, 34:19
limitations [1] - 24:12
limits [1] - 34:22
listen [3] - 7:7, 16:3, 27:7
live [2] - 21:18, 21:23
lives [1] - 19:8
living [1] - 33:9
LLC [1] - 1:18
look [2] - 23:25, 35:22
lower [2] - 26:21, 32:25

**M**

machine [1] - 1:25
magazines [1] - 8:2
mail [4] - 28:15, 28:21, 28:23, 31:1
malled [4] - 8:4, 8:6, 8:20, 8:22
male [2] - 27:23, 28:6
mandatory [8] - 9:3, 9:4, 9:6, 9:8, 9:9, 9:11, 9:15, 34:20
March [4] - 5:3, 5:4, 28:14, 29:2
Market [1] - 1:23
material [1] - 26:21
materials [3] - 8:6, 8:18, 8:21
matter [4] - 4:23, 5:10, 8:2, 36:6
maximum [3] - 9:2, 9:8, 34:19
mean [1] - 22:23
meaning [1] - 14:25
means [2] - 4:10, 8:5
medication [1] - 5:13

members [1] - 10:25
memorandum [5] - 26:1, 29:5, 29:11, 30:4, 32:2
Memorandum [1] - 28:17
mental [1] - 5:11
mentioned [3] - 23:8, 26:10, 30:15
messages [1] - 28:13
met [1] - 30:13
might [3] - 26:12, 30:25
minimum [11] - 9:3, 9:4, 9:8, 9:9, 9:15, 18:7, 18:8, 18:13, 18:14, 18:15, 34:20
minor [17] - 8:9, 8:15, 8:18, 27:11, 27:24, 28:2, 28:10, 28:21, 29:9, 29:14, 29:16, 29:17, 29:18, 29:23, 30:13, 30:19
minors [1] - 24:13
Missing [1] - 27:19
Missouri [2] - 32:20, 32:23
Montgomery [1] - 6:14
months [11] - 17:2, 17:7, 17:13, 17:20, 18:1, 18:9, 21:6, 23:10, 23:12, 23:14, 33:10
morning [12] - 3:2, 3:3, 3:8, 3:16, 4:15, 7:14, 10:11, 10:13, 11:19, 14:13, 33:19, 33:25
most [1] - 30:3
motion [1] - 11:19
motions [2] - 12:2, 12:5
move [4] - 16:15, 16:17, 17:14, 21:16
moved [2] - 29:21, 29:25
moves [1] - 20:1
MR [19] - 3:16, 3:19, 4:24, 5:2, 5:4, 5:25, 6:3, 14:5, 14:7, 14:10, 14:14, 15:4, 15:9, 15:11, 26:5, 33:13, 33:16, 35:17, 35:23
MS [53] - 3:8, 5:22, 7:17, 7:25, 8:12, 9:1, 9:14, 9:20, 9:23, 9:25, 16:12, 16:21, 16:23, 17:6, 17:8, 17:11,

17:18, 17:21, 18:5, 18:13, 18:15, 18:17, 18:20, 19:1, 19:6, 19:10, 19:19, 19:22, 19:25, 20:7, 20:9, 20:14, 20:17, 26:8, 26:18, 26:25, 27:3, 27:5, 27:9, 27:14, 27:16, 28:8, 29:20, 29:22, 30:9, 31:4, 31:6, 32:15, 32:19, 32:22, 33:6, 35:20, 35:24
must [1] - 4:10

**N**

name [2] - 3:23, 30:20
narcotics [1] - 5:7
National [1] - 27:18
nature [1] - 8:17
NCMEC [2] - 27:18, 27:21
net [1] - 20:12
never [1] - 5:17
nevertheless [3] - 10:11, 17:24, 23:23
new [2] - 20:3, 20:4
nice [1] - 3:9
NO [1] - 1:6
nontrial [1] - 4:22
north [1] - 6:12
noted [1] - 28:16
nothing [2] - 18:3, 33:8
notice [1] - 9:17
notified [2] - 27:21, 27:22
notwithstanding [1] - 33:20
Number [2] - 3:6, 35:4
number [3] - 11:21, 24:11, 30:17
numbers [1] - 30:10

**O**

oath [1] - 4:8
objection [2] - 35:16, 35:17
obligation [2] - 21:15, 24:6
obligations [4] - 19:4, 19:5, 24:16, 24:20
obliged [2] - 6:17, 10:11

obtain [1] - 6:9
obvious [1] - 12:24
obviously [2] -
16:24, 20:10
occasion [1] - 7:10
occasions [1] - 7:5
occupational [1] -
24:12
occurred [1] - 29:12
October [5] - 22:21,
24:22, 27:21, 35:15,
35:22
OF [4] - 1:2, 1:4,
1:11, 1:14
offenders [1] - 21:12
offense [3] - 16:20,
20:12, 26:11
offenses [4] - 7:15,
7:16, 10:24, 13:25
offer [3] - 32:24,
32:25
OFFICE [1] - 1:14
officer [9] - 22:10,
22:14, 22:15, 22:19,
22:22, 23:3, 23:5,
24:10, 24:13
officers [1] - 22:25
Official [2] - 1:22,
36:10
often [1] - 28:1
Old [1] - 25:8
One [9] - 7:19, 7:21,
7:24, 7:25, 10:10,
16:14, 16:18, 29:1,
35:9
one [13] - 7:21, 8:1,
8:13, 9:18, 13:9, 18:5,
18:9, 20:1, 21:10,
21:14, 24:10, 25:6,
29:12
onerous [2] - 21:21,
23:1
opposed [1] - 19:21
order [1] - 35:12
outset [1] - 4:24
overlooked [1] -
32:18

## P

PA [3] - 1:16, 1:20,
1:24
page [5] - 14:16,
26:24, 28:16, 29:4,
29:11
pages [1] - 30:4
paragraph [4] - 15:7,
15:9, 16:22, 26:20
Pardon [1] - 32:21

part [1] - 34:4
particular [2] -
28:11, 30:16
parties [1] - 15:16
parties' [1] - 15:11
past [1] - 23:11
pause [1] - 12:23
pay [2] - 7:2, 18:19
paying [1] - 24:15
penalties [4] - 7:15,
8:24, 9:1, 34:19
penalty [1] - 34:20
Penn [1] - 6:12
PENNSYLVANIA [2]
- 1:2, 1:7
Pennsylvania [4] -
1:15, 19:9, 21:20,
29:20
people [1] - 22:13
percent [2] - 12:24,
16:7
perfect [1] - 6:16
period [6] - 9:4, 9:9,
18:12, 29:25
periodicals [1] - 8:2
perjury [1] - 4:15
permitted [1] - 12:9
phase [1] - 11:20
PHILADELPHIA [1] -
1:7
Philadelphia [3] -
1:16, 1:20, 1:24
physical [1] - 12:2
pics [5] - 28:1, 29:13,
29:14, 29:15
pictures [1] - 30:10
plea [25] - 11:19,
12:6, 17:2, 17:20,
17:23, 18:1, 18:10,
21:5, 24:2, 32:11,
32:13, 32:24, 32:25,
33:2, 33:3, 33:11,
34:12, 34:17, 34:20,
34:21, 34:24, 34:25,
35:3, 35:14
PLEA [1] - 1:11
Plea [21] - 7:17, 14:4,
14:16, 15:5, 15:12,
15:14, 16:2, 16:6,
16:11, 16:12, 17:12,
18:6, 18:23, 19:2,
20:10, 23:13, 23:20,
26:17, 26:22, 28:17,
34:14
plead [7] - 7:19,
11:10, 12:25, 13:10,
13:18, 16:13, 34:11
pleaded [1] - 19:15
pleading [3] - 7:14,
10:10, 21:10

plus [2] - 23:14,
23:15
podium [1] - 26:9
point [2] - 12:24,
24:19
points [1] - 26:19
pornography [11] -
7:22, 7:23, 8:13, 28:1,
28:2, 28:9, 28:14,
28:20, 29:3, 35:5,
35:7
possessed [2] - 8:1,
29:3
possession [5] -
7:21, 9:2, 19:15,
28:25, 35:5
possibility [1] - 4:22
practice [1] - 11:19
prepared [1] - 34:8
prescribes [1] - 5:14
present [1] - 30:24
presented [1] - 27:10
presentence [5] -
17:25, 22:9, 22:11,
22:17, 35:13
presume [1] - 23:20
presumes [1] - 10:16
presumption [1] -
22:6
preview [3] - 33:15,
33:18, 33:21
previously [1] - 35:3
principle [1] - 25:8
Probation [1] - 16:24
probation [10] -
22:10, 22:14, 22:19,
22:22, 22:25, 23:3,
23:5, 24:9, 24:13
proceed [2] - 3:18,
6:2
proceeding [2] -
18:23, 33:15
Proceedings [1] -
3:1
proceedings [2] -
35:25, 36:5
produced [3] - 1:25,
8:6, 8:21
production [1] - 8:8
projected [1] - 26:14
promises [3] - 15:12,
15:14, 34:14
property [4] - 25:9,
25:11, 25:12, 25:16
proposed [1] - 23:21
proposing [1] - 17:2
prosecutor [1] - 7:10
proved [2] - 10:20,
11:1
provider [1] - 5:11

provides [1] - 19:3
psychiatrist [2] -
5:10, 5:24
psychologist [1] -
5:11
put [4] - 5:5, 16:25,
32:1, 32:4

## Q

questions [4] - 13:4,
14:24, 33:21, 34:6

## R

raised [1] - 7:9
range [7] - 16:18,
17:1, 17:8, 23:9,
23:13, 26:14
rattle [1] - 4:13
rattling [1] - 24:24
re [1] - 14:11
re-executed [1] -
14:11
read [8] - 4:4, 15:7,
26:1, 30:7, 30:8,
31:16, 31:20
ready [2] - 3:18,
34:25
real [1] - 22:24
reason [4] - 10:23,
13:20, 25:1, 34:2
reasonable [2] -
10:20, 11:2
receipt [5] - 7:22,
8:12, 19:15, 28:9,
35:7
receipts [1] - 29:17
receive [1] - 9:7
received [3] - 8:14,
28:12, 29:24
recite [1] - 27:8
recites [1] - 15:5
record [9] - 15:2,
15:8, 26:14, 30:5,
30:9, 32:12, 33:1,
34:15, 36:5
records [1] - 29:24
reduction [1] - 26:19
reevaluate [1] - 20:3
reference [1] - 31:15
reflect [1] - 33:1
register [1] - 20:2
registration [1] -
22:2
rehearse [4] - 7:13,
16:11, 25:23, 27:4
rejected [1] - 32:25

relates [1] - 28:18
release [15] - 9:4,
9:5, 9:10, 9:11, 9:16,
18:7, 18:8, 18:12,
21:7, 21:16, 23:15,
24:5, 24:7, 24:25,
25:4
rely [3] - 31:25, 32:5,
32:8
repeat [1] - 30:5
report [7] - 17:25,
22:10, 22:11, 22:17,
24:11, 24:13, 35:13
Reporter [2] - 1:22,
36:10
represent [2] - 6:18,
7:3
representation [2] -
4:25, 18:22
representing [3] -
3:6, 3:14, 5:6
requesting [1] -
29:14
require [1] - 17:14
required [2] - 8:13,
20:16
requirement [1] -
19:13
resolution [1] - 4:23
respect [1] - 30:18
result [1] - 34:13
retain [1] - 6:16
retained [2] - 4:18,
33:10
return [1] - 29:1
revealed [1] - 30:12
reviewed [1] - 29:10
rights [3] - 10:12,
34:18, 34:22
Rights [2] - 14:8,
15:5
Robert [4] - 3:5,
3:23, 34:10, 35:2
ROBERT [2] - 1:6,
3:22
Roberta [1] - 3:7
ROBERTA [1] - 1:14
room [1] - 1:23
RPR [2] - 1:22, 36:10
rubber [1] - 22:23
rule [1] - 24:25
ruled [1] - 13:16
rules [1] - 24:11

## S

sabers [2] - 4:13,
24:24
satisfaction [2] -

13:6, 14:22
satisfied [4] - 6:24,
6:25, 32:13, 33:11
schedule [1] - 24:21
school [2] - 6:5, 6:11
School [1] - 6:12
search [4] - 11:21,
28:11, 29:1, 29:6
seated [3] - 7:11,
16:9, 27:6
second [1] - 16:3
Section [2] - 35:6,
35:8
see [2] - 3:9, 22:10
seeing [1] - 35:22
sending [1] - 28:1
sent [4] - 28:13,
28:20, 29:15, 29:16
sentence [9] - 17:12,
17:19, 18:25, 23:1,
23:12, 23:14, 24:22,
34:23, 34:24
sentencing [7] -
16:15, 21:3, 22:9,
22:16, 22:20, 23:18,
35:14
serial [1] - 30:17
serious [3] - 24:8,
24:20, 25:4
seriously [1] - 17:24
services [3] - 6:17,
6:24, 7:2
set [2] - 15:13, 35:14
sex [1] - 21:11
sexual [3] - 27:25,
29:15, 30:21
sexually [4] - 8:9,
8:16, 8:17, 8:19
shall [1] - 22:16
shape [1] - 13:9
shipped [4] - 8:4,
8:7, 8:20, 8:22
shorthand [1] - 1:25
showed [2] - 28:5,
28:13
side [2] - 11:15, 23:5
signature [2] - 14:15,
15:3
signed [4] - 14:6,
14:9, 14:18, 15:16
similar [1] - 28:19
simple [1] - 13:20
so-called [1] - 21:5
someone [1] - 20:1
sometimes [3] -
12:1, 22:17, 23:2
SORNA [3] - 19:4,
19:23, 24:6
sort [3] - 28:2, 28:19,
29:11

sovereign [2] -
25:12, 25:16
special [5] - 9:6,
9:11, 9:16, 18:3, 21:8
specific [3] - 17:12,
17:19, 28:15
specified [1] - 30:16
stamp [1] - 22:24
state [8] - 19:7,
19:19, 19:20, 20:1,
20:3, 21:16
statements [1] - 12:3
states [1] - 21:18
STATES [3] - 1:1,
1:4, 1:14
States [6] - 1:15, 3:4,
25:13, 25:17, 35:6,
35:8
statutory [5] - 7:15,
8:24, 9:1, 9:13, 34:19
step [1] - 6:22
STEWART [1] - 1:10
still [3] - 17:24,
29:22, 30:1
stipulations [1] -
20:10
story [2] - 4:14,
11:15
Street [3] - 1:16,
1:19, 1:23
stress [1] - 23:19
subject [4] - 21:11,
21:22, 24:11, 32:16
subjects [1] - 7:9
submission [2] -
11:22, 32:6
subpoenaed [1] -
12:18
subpoenaing [1] -
12:21
Sucheski [3] - 2:2,
3:10, 22:12
Suite [2] - 1:16, 1:19
summary [2] - 25:25,
27:9
summer [1] - 30:1
Superseding [7] -
7:20, 16:14, 16:16,
28:19, 28:24, 28:25,
35:4
supervised [14] -
9:4, 9:5, 9:10, 9:16,
18:7, 18:8, 18:12,
21:7, 23:14, 24:5,
24:7, 24:25, 25:4
supplements [1] -
31:20
supplied [1] - 31:17
suppress [1] - 12:2
suspicious [1] -

27:22
swearing [1] - 4:15
SWORN [1] - 3:22

T

T.L [1] - 1:19
table [2] - 13:20,
13:25
telephonic [1] -
29:24
ten [7] - 9:2, 18:7,
18:8, 18:11, 21:6,
23:14, 24:8
ten-year [1] - 18:11
terms [4] - 16:11,
16:12, 19:17, 30:10
Testament [1] - 25:8
testify [2] - 11:5,
11:7
testimony [5] -
27:11, 27:12, 27:17,
27:21, 28:4
THE [237] - 1:1, 1:2,
1:10, 1:14, 1:18, 3:2,
3:4, 3:9, 3:11, 3:12,
3:13, 3:14, 3:17, 3:20,
3:23, 3:25, 4:1, 4:3,
4:4, 4:6, 4:7, 4:9,
4:10, 4:12, 4:13, 4:17,
4:18, 4:20, 4:21, 5:1,
5:3, 5:5, 5:8, 5:9,
5:12, 5:13, 5:16, 5:17,
5:19, 5:20, 5:23, 6:1,
6:4, 6:6, 6:7, 6:8, 6:9,
6:10, 6:11, 6:12, 6:13,
6:14, 6:15, 6:20, 6:21,
6:25, 7:1, 7:4, 7:5,
7:24, 8:11, 8:24, 9:13,
9:19, 9:22, 9:24, 10:1,
10:6, 10:7, 10:8, 10:9,
10:17, 10:18, 10:22,
10:23, 11:3, 11:4,
11:6, 11:7, 11:12,
11:13, 11:17, 11:18,
11:25, 12:1, 12:7,
12:8, 12:12, 12:13,
12:16, 12:17, 12:22,
12:23, 13:2, 13:3,
13:5, 13:6, 13:7, 13:8,
13:11, 13:12, 13:13,
13:14, 13:23, 13:24,
14:2, 14:3, 14:6, 14:8,
14:12, 14:15, 14:17,
14:18, 14:20, 14:21,
14:23, 14:24, 15:1,
15:2, 15:6, 15:10,
15:17, 15:19, 15:20,
15:21, 15:22, 15:24,
15:25, 16:8, 16:9,

16:20, 16:22, 17:4,
17:7, 17:10, 17:16,
17:19, 17:22, 18:11,
18:14, 18:16, 18:18,
18:21, 19:2, 19:9,
19:18, 19:21, 19:23,
20:5, 20:8, 20:12,
20:15, 20:18, 20:22,
20:23, 20:24, 20:25,
21:13, 21:14, 21:19,
21:20, 21:25, 22:1,
22:3, 22:4, 22:5, 22:6,
23:17, 23:18, 23:24,
23:25, 24:4, 24:5,
24:18, 24:19, 24:23,
24:24, 25:3, 25:4,
25:14, 25:15, 25:18,
25:19, 25:20, 25:21,
26:3, 26:4, 26:6,
26:16, 26:23, 27:1,
27:4, 27:6, 27:13,
27:15, 28:7, 29:18,
29:21, 30:7, 31:3,
31:5, 31:7, 31:12,
31:13, 31:14, 31:15,
31:18, 31:19, 31:22,
31:23, 31:24, 31:25,
32:3, 32:4, 32:7, 32:8,
32:9, 32:10, 32:16,
32:21, 33:5, 33:9,
33:14, 33:17, 33:23,
33:24, 34:1, 34:2,
34:5, 34:6, 34:7, 34:8,
35:2, 35:11, 35:12,
35:18, 35:21
thinking [2] - 32:22,
33:2
third [1] - 25:21
Third [7] - 7:20,
16:14, 16:16, 28:19,
28:24, 28:25, 35:3
thorough [3] - 12:14,
16:1, 21:1
threats [1] - 34:13
three [15] - 7:5, 8:7,
8:16, 10:10, 10:19,
13:15, 13:19, 13:21,
13:25, 20:5, 21:22,
25:24, 33:12, 34:17,
34:18
Three [9] - 7:20,
7:22, 8:12, 9:7, 10:11,
16:14, 16:19, 28:24,
35:9
Title [2] - 35:6, 35:7
today [3] - 6:23,
14:6, 14:11
together [4] - 3:4,
22:16, 24:22, 34:3
Tom [1] - 33:3

total [1] - 9:13
traffic [1] - 26:20
Transcript [1] - 1:25
transcript [1] - 36:4
transported [4] - 8:4,
8:7, 8:20, 8:22
treated [1] - 5:18
trial [11] - 6:23,
10:12, 10:14, 11:4,
12:8, 12:14, 12:18,
12:20, 25:25, 27:10,
30:25
true [1] - 15:20
truth [3] - 4:11, 32:1,
32:5
Two [10] - 7:19, 7:22,
8:11, 8:12, 9:7, 10:10,
16:14, 16:19, 28:18,
35:9
two [4] - 8:3, 8:15,
26:19, 26:21
type [2] - 24:9, 25:5
typically [1] - 23:1

U

U.S [3] - 1:23, 13:17,
15:23
ultimately [1] - 24:21
unanimously [1] -
11:1
under [11] - 4:8,
16:22, 17:16, 17:23,
19:4, 19:23, 20:5,
21:3, 23:13, 24:6,
34:20
understandings [2] -
15:13, 15:15
understood [4] -
10:7, 20:23, 31:13,
31:23
UNITED [3] - 1:1,
1:4, 1:14
United [6] - 1:15, 3:4,
25:12, 25:17, 35:6,
35:7
unless [2] - 15:15,
30:5
up [6] - 9:4, 9:10,
11:5, 18:7, 19:6,
21:15
ups [1] - 23:3
upward [6] - 16:17,
17:14, 20:15, 23:8

V

variance [4] - 16:17,
17:14, 20:15, 23:8

**various** [3] - 21:18, 27:25, 30:21
**verdict** [1] - 13:17
**versus** [2] - 3:5, 32:23
**via** [1] - 1:25
**victim** [2] - 27:11, 29:10
**videotapes** [1] - 8:2
**violate** [1] - 24:25
**violation** [2] - 35:5, 35:7
**visual** [6] - 8:3, 8:8, 8:10, 8:14, 8:18
**voluntary** [3] - 32:13, 33:11, 34:13
**vs** [1] - 1:5

**year** [2] - 18:11, 34:20
**years** [12] - 9:2, 9:4, 9:8, 9:9, 9:10, 9:14, 9:15, 18:7, 18:8, 21:7, 23:14, 24:8
**yourfantasy1207@ yahoo.com** [1] - 28:23
**yourself** [1] - 11:23

# W

**waives** [1] - 34:22
**Walnut** [1] - 1:19
**wants** [1] - 30:6
**warrant** [2] - 29:2, 29:6
**warrants** [2] - 11:21, 28:11
**weight** [1] - 13:18
**welcome** [4] - 3:12, 3:17, 10:2, 31:9
**WENDELL** [3] - 1:6, 3:22, 3:24
**Wendell** [4] - 3:5, 3:23, 34:11, 35:2
**whichever** [1] - 23:5
**withdraw** [1] - 24:2
**witness** [1] - 12:10
**witnesses** [3] - 12:18, 12:19
**works** [1] - 22:23
**world** [1] - 22:24
**wrinkle** [1] - 25:6
**write** [1] - 4:4
**writes** [2] - 22:24, 24:10
**writing** [1] - 15:16
**written** [5] - 15:13, 31:16, 32:6, 32:24

# X

**xtictac22@yahoo. com** [1] - 28:18

# Y

**Yahoo** [2] - 28:12, 29:1